334 F.2d 788
 LAUNDRY EQUIPMENT SALES CORPORATION and Sam Rosenthal, Plaintiffs-Appellants,
v.
BORG-WARNER CORPORATION, Norge Sales Corporation, B-W Acceptance Corporation, Zeolux Corporation, Sam Zeoli, Dorothy Barrows, James Mattise, and Judson S. Sayre, Defendants-Appellees.
 No. 14398.
 United States Court of Appeals Seventh Circuit.
 July 24, 1964.
 Rehearing Denied August 31, 1964.
 
 Robert E. Wiss, Chicago, Ill., Alvin L. Korngold, Mineola, N. Y., Thomas A. Foran, Chicago, Ill., Foran & Wiss, Chicago, Ill., of counsel, for appellants.
 John Paul Stevens, Richard L. McIntire, Chicago, Ill., Rothschild, Hart, Stevens & Barry, Chicago, Ill., of counsel, for Zeolux Corp., Sam Zeoli, Dorothy Barrows and James Mattise.
 Daniel M. Schuyler, Robert V. R. Dalenberg, Edgar D. Ballard, Jr., Schuyler, Stough & Morris, Chicago, Ill., of counsel, for appellees Borg-Warner Corporation, Norge Sales Corporation, B-W Acceptance Corporation and Judson S. Sayre.
 Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 This action was filed in the District Court on July 19, 1961. Judgments were entered for the defendant-appellees, Borg-Warner Corporation, Norge Sales Corporation, B-W Acceptance Corporation, Zeolux Corporation, Sam Zeoli, Dorothy Barrows, James Mattise, and Judson S. Sayre, upon the District Court's finding that the claims of the plaintiffs-appellants, Laundry Equipment Sales Corporation, and Sam Rosenthal, its principal stockholder, were barred by the statute of limitations here applicable, Title 15 U.S.C.A. § 15b or by releases between the plaintiffs and some of the defendants. This appeal followed.
 
 
 2
 Plaintiff, Laundry Equipment Sales Corporation, hereinafter sometimes called "Laundry," was the exclusive distributor of defendant Borg-Warner Corporation's coin-operated washing machines and dryers through a franchise agreement with Norge Sales Corporation, the sales agency for Borg-Warner Corporation.
 
 
 3
 In their amended complaint, plaintiffs allege a primary conspiracy between Norge Sales Corporation, hereinafter sometimes called "Norge," Borg-Warner Corporation, hereinafter sometimes called "B-W," and Judson S. Sayre, president of Norge, to attempt to monopolize a substantial part of the market in coinoperated washing machines and dryers. The plaintiffs further allege that to implement this primary conspiracy, the above-named defendants, sometimes for convenience called the "Norge defendants," conspired with the Zeolux Corporation, formerly known as Sam Zeoll, Inc., and Sam Zeoli, James Mattise, and Dorothy Barrows, officers, directors shareholders or employees of Zeolux Corporation, to terminate Laundry's distributorship and establish Zeolux Corporation as a successor, apparent (but not actual) independent distributor.
 
 
 4
 The plaintiffs further allege that the Zeolux franchise was subsequently terminated and Norge itself assumed the distributorship function as planned.
 
 
 5
 The issues concerning the running of the statute of limitations and the effect of certain releases were tried separately before the late Honorable Julius H. Miner. Proposed findings of fact, briefs and memoranda were submitted for his consideration. On his death, prior to determination of the defendants' motions to dismiss and for summary judgment on the affirmative defenses noted, the parties stipulated that the issues tried before the late Judge Miner be determined on the record made at that trial. The Honorable Fred L. Wham adopted the findings of fact and conclusions of law submitted by the defendants and entered judgments in their favor.
 
 
 6
 The District Court found that in November, 1955, Laundry and Norge entered into a franchise agreement which was terminated, after various modifications, on or shortly before January 23, 1957. Plaintiff Sam Rosenthal, as indicated, was the principal stockholder of Laundry. Defendant Sam Zeoli was also a stockholder of Laundry, having bought his stock with the proceeds of a loan from Sam Rosenthal. Until he resigned in December, 1956, Sam Zeoli was the president of Laundry.
 
 
 7
 Laundry encountered financial problems which plaintiffs attribute to defects in the Norge machines. They contend that Sam Rosenthal was fraudulently induced to establish Laundry as exclusive distributor on the misrepresentation that B-W had developed machines fit for commercial use and that B-W subsequently refused to make improvements which were within B-W's power to make to cure the defects in the machines, until after Laundry's franchise had been terminated. These allegations were denied by the defendants.
 
 
 8
 Norge repurchased Laundry's inventory of Norge machines, agreeing to hold them for sale to Laundry until November, 1956, while Laundry sought inventory financing. The date was later extended to January 1, 1957. In December, 1956, Norge refused further financial assistance to Laundry. Other proposals variously discussed in February between and on behalf of Sam Zeoli, Norge, and Sam Rosenthal failed to result in any agreement.
 
 
 9
 In March, 1957, a new distributorship franchise issued from Norge to a new corporation, Sam Zeoli, Inc., (later called Zeolux Corporation). Norge extended substantial credit and made a loan to Zeoli, Inc. which the latter subsequently repaid.
 
 
 10
 Sam Zeoli openly went into business immediately. During the spring and summer of 1957 while Sam Rosenthal was liquidating Laundry, his accountants visited the new Zeoli store several times for assistance and made reports on these visits. One accountant reported that Sam Zeoli was "betraying" Laundry and had received machines far superior to those previously sent to Laundry.
 
 
 11
 The District Judge found that prior to July 19, 1957, more than four years before commencing this action, Sam Rosenthal knew that Laundry's franchise had been terminated; that Sam Zeoli had thereafter sought and obtained the Norge franchise, received substantial financial assistance from Norge, and claimed to have improved machines.
 
 
 12
 The record substantially supports the District Court's findings that:
 
 
 13
 "The evidence shows that Rosenthal was represented by attorneys and accountants upon whom he relied * * * Nothing was concealed by any one or more of the defendants from the plaintiffs or either of them and no fraud, misrepresentation, trick or contrivance was practiced upon the plaintiffs or either of them by the defendants or any one or more of them. In view of the foregoing, and in the light of all of the evidence, plaintiffs, prior to July 19, 1957, knew or should have known of their alleged cause or causes of action against defendants."
 
 
 14
 In July, 1957, Sam Rosenthal sued Sam Zeoli for the balance due on the loan made to him when Laundry was formed. This action was settled in June, 1958, on payment of $3,000 to Sam Rosenthal. Under date of June 16, 1958, mutual releases were arranged and Sam Rosenthal and Laundry delivered general releases in favor of Sam Zeoli, Josephine Zeoli and Sam Zeoli, Inc. Sam Rosenthal's suit against Sam Zeoli was dismissed by stipulation of the same date with an option (later exercised) dated June 17, 1958, in favor of Sam Rosenthal to purchase Sam Zeoli's stock in Laundry for $25.
 
 
 15
 In October, 1960, Laundry sued Sam Zeoli, Sam Zeoli, Inc., B-W and Norge in New York City, charging breach of warranty by B-W and Norge and conspiracy to terminate Laundry's franchise and appoint Sam Zeoli in its stead. This action was voluntarily dismissed as to B-W and Norge. The releases above described were exhibited to plaintiff's counsel. The action was dismissed as to Sam Zeoli and Sam Zeoli, Inc.
 
 
 16
 There were no restrictions in these general releases which were given for a valid consideration, although plaintiffs here argue that they have not received such full compensation as to preclude their maintaining this action. The plaintiffs also contend that the joint tortfeasor doctrine ought not to be held applicable in this case. Because of our conclusion with respect to the statute of limitations, it is not necesary for us to decide that issue here.
 
 
 17
 It is plaintiffs' position that Norge and B-W sought to create the appearance of having vertical integration thrust upon them after an apparent, but not real, attempt to utilize independents for distribution and retail sale in the field. It is plaintiffs' theory that the Norge defendants induced Sam Rosenthal to invest large sums of money and to establish the distributorship, and, at the same time, deliberately insured his failure first by providing him with a poor product to sell and later by refusing to make improvements which were well within their power; that Sam Zeoli conspired with them to this end even though it ultimately meant putting himself out of business.
 
 
 18
 Plaintiffs' view is that irrespective of when they learned of the overt acts here involved, the conspiracy itself was not discovered by them until 1961, after the date of the releases and within four years of the date of this suit. They further aver that overt acts in furtherance of the conspiracy occurred within four years of the filing of this suit, although these overt acts do not have the effect of damaging plaintiffs. Plaintiffs distinguish between actual damage and what they refer to as the legal "injury" done them. They argue that here apparently lawful means were employed to accomplish the unlawful object of the conspiracy and hence the action is timely filed if it is brought within the statutory period from the date of their discovery or the actual termination of the conspiracy whichever is the earlier.
 
 
 19
 Even should it be held that this was a conspiracy accomplished by unlawful means, the plaintiffs contend that the statute began to run only with the last overt act in furtherance of the conspiracy when the Zeoli distributorship terminated in March, 1960, even though that act did not damage plaintiffs, or, at the earliest they maintain, with the releases of June 16, 1958.
 
 
 20
 However, as indicated, there was no showing of any fraudulent concealment here, unlike the situations in American Tobacco Co. v. People's Tobacco Co., 5th Cir., 1913, 204 F. 58, 60, and other cases cited by the plaintiffs.
 
 
 21
 In Winkler-Koch Engineering Co. v. Universal Oil Prod. Co., S.D., N.Y., 100 F.Supp. 15, on which plaintiffs place great reliance, we have a particularly complex conspiracy in which, as the Court there said:
 
 
 22
 "The facts alleged in the complaint and in the bill of particulars (which on this separate trial are to be taken as true) disclose a series of acts committed by the conspirators with a common design and for the common purpose of destroying plaintiff's business in the Winkler-Koch cracking process and unit; they were so integrated and took place in such close and inextricable connection that for purposes of appraising the nature of plaintiff's claim, the complete sequence of acts and events constitutes an interdependent whole. * * *
 
 
 23
 "[T]he numerous and varied methods and means by which the conspirators effectuated their conspiracy to the extent to which it was directed at plaintiff cannot be segregated one from the other as separate and distinct invasions of plaintiff's interests. * * *
 
 
 24
 "The purpose and object of the conspiracy to eliminate plaintiff from competition in the cracking equipment and process field was accomplished when plaintiff's business in contracting for the design, engineering and installation of the Winkler-Koch cracking process and unit was destroyed and plaintiff discontinued soliciting said business; this destruction resulted from the aggregate effect of all of the acts alleged. No date of destruction of plaintiff's said business is fixed at this time, but the same is left open as an issue of fact which may be determined at the general trial of this case on the merits." [pages 26 and 27]
 
 
 25
 That is not the case before us.
 
 
 26
 Plaintiffs here failed to sustain their burden of showing not only their failure to discover their cause of action prior to the running of the statute of limitations, but also their exercise of due diligence and the fraudulent concealment, mistake or misrepresentation which frustrated it. Moviecolor Ltd. v. Eastman Kodak Co., 2nd Cir., 1961, 288 F.2d 80, 88. See also Crummer v. DuPont, 5th Cir., 1958, 255 F.2d 425, 432, where the Court quoted with approval:
 
 
 27
 "Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry." Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F.2d 924, 929, reaffirmed in Hickok Producing & Development Co. v. Texas Co., 5 Cir., 128 F.2d 183.
 
 
 28
 Crummer was reversed and remanded because of a directed verdict. As the Court in Crummer states:
 
 
 29
 "We think it cannot be said as a matter of law that appellants had knowledge of the existence of the cause of action here sued upon for more than three years prior to the date of suit. This is a fact question and on the record before us should have been left to the jury."
 
 
 30
 We must agree with the District Court that the plaintiffs' claim is barred by 15 U.S.C.A. § 15b.
 
 
 31
 The judgments of the District Court must be and they are affirmed.
 
 
 32
 Affirmed.