**Alphra SAUNDERS, Plaintiff,**

v.

**The NATIONAL BASKETBALL ASSO-
CIATION et al., Defendants.**

No. 69 C 2477.

United States District Court,
N. D. Illinois, E. D.

Sept. 26, 1972.

Allan A. Ackerman, of Witt & Festoso, Chicago, Ill., for plaintiff.

Monheimer, Schermer, Van Fredenberg & Smith, Seattle, Wash., Earl E. Pollock, of Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., George G. Gallants, New York City, William G. Vance, Atlanta, Ga., Simpson, Thacher & Bartlett, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This is an action under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, and the Clayton Act, 15 U.S.C. §§ 15 and 26. The plaintiff, Alphra Saunders, filed his complaint on December 2, 1969, naming as defendants the National Basketball Association ("NBA"), its member teams, and its Commissioner. The plaintiff alleges that since 1961 he has been denied an opportunity to prove his eligibility for membership in the NBA. He further alleges that this denial has been made by defendants arbitrarily pursuant to a conspiracy. The plaintiff seeks injunctive relief plus money damages or, alternatively, money damages alone.

The instant motion is based on a claim that the action is barred both by the applicable Statute of Limitations and also by plaintiff's admitted failure to request or apply for the employment which he alleges was denied him. The defendants aver that based on the Stipulations of the parties, there is no genu-

ine issue as to any material fact and that as a matter of law, judgment should be rendered in their favor.

Plaintiff contends that defendant's motion for summary judgment should be denied for the following reasons:·

   I.   There are genuine issues of material fact concerning plaintiff's compliance with the applicable Statute of Limitations.

   II.   Plaintiff's claim is not barred by his failure to request or apply for employment.

   III.   The motion for summary judgment should be denied for the following additional reasons:

   A.   The nature of summary procedure.

   B.   Prior rulings in this case.

   C.   Plaintiff's right of trial by jury.

The following facts, *inter alia,* were stipulated to by the parties on June 23 and July 1, 1971. First, that the National Basketball Association ("NBA") is a league of professional basketball teams which each year conducts a "college draft" in which college players are selected by NBA teams for possible employment. Second, that plaintiff played basketball at Bradley University between 1957 and 1961. Third, that during his senior year plaintiff was not a regular starting player at Bradley; that he was not named to either the first or second Missouri Valley All-Conference Teams, and that he was expelled from Bradley because he failed to report his receipt of money from men who tried to induce him to shave points in Bradley University games. Fourth, that plaintiff has never applied to play in the NBA, that he never requested a try-out with any NBA team (although none of the defendants ever told him that he was ineligible for such a try-out), and that during the period from the completion of his college basketball career in 1961 until he filed suit in 1969, he never communicated with any of the defendants to show any interest in becoming an NBA player. Fifth, that of the 24 players in plaintiff's Conference who finished ahead of him in individual scoring during his last year of varsity basketball at Bradley, only 13 were drafted by the NBA and of these, seven did not play in the NBA for even one full year. Sixth, that over two-thirds of those individuals drafted by the NBA College Draft system in the years between 1960 and 1967 did not see one full year of active service in the NBA for various reasons (*i. e.* cut by the teams, not offered a contract, did not accept a contract, etc.[1]).

1. The following table was compiled from stipulations presented pursuant to the instant motion:

NBA DRAFT STATISTICS

|  | 1960 | 1961 | 1962 | 1963 | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|---|---|---|---|
| # Drafted by NBA in the College Draft | 96 | 106 | 100 | 83 | 99 | 112 | 79 | 167 |
| # of Drafted players either cut, not offered or who did not accept contracts, or for other reasons never saw one full year of active service in NBA | 67 | 81 | 77 | 71 | 77 | 89 | 54 | 137 |
| # Drafted who had more than one year active playing in NBA | 29 | 25 | 23 | 12 | 22 | 23 | 25 | 24 |
| # Drafted who played only one year | 12 | 5 | 2 | 3 | 4 | 3 | 3 | 3 |
| # Drafted who played between 2 and 5 years | 13 | 13 | 10 | 4 | 2 | – | 3 | 3 |
| # Drafted who played more than 5 years | 4 | 7 | 11 | 5 | 17 | – | – | – |
| # Active in NBA in 1970–71 | 4 | 6 | 10 | 5 | 17 | 20 | 19 | 18 |

Because the stipulations of uncontested facts show conclusively that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law, it is this Court's opinion that the defendant's motion for summary judgment should be granted.

## I. THE ACTION IS BARRED BY THE STATUTE OF LIMITATIONS

The applicable Statute of Limitations provides:

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. . . ." Clayton Act § 4B, 15 U.S.C. § 15b.

The complaint charges a conspiracy to refuse to employ plaintiff "beginning in or about March 1961 and continuing from day to day up to the date of this complaint (December 2, 1969)". It is the Court's opinion that plaintiff has failed to allege a cause of action accruing within the four year period immediately preceding December 2, 1969.

The Supreme Court, in discussing the four-year limitation period for civil anti-trust actions, recently stated:

"Generally a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. . . . This much is plain from the treble-damage statute itself. 15 U.S.C. § 15. In the context of a *continuing conspiracy* to violate the anti-trust laws, such as the conspiracy in the instant case, *this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act* and that, as to those damages, the statute of limitations runs from the commission of the act. . . ." Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). [Emphasis added].

This established principle has been consistently adhered to in numerous lower federal court decisions.

■ It is clear that where a continuing conspiracy is involved, the statute of limitations begins to run from the date of the last overt act in furtherance of that conspiracy which causes damage to plaintiff. See Garelick v. Goerlich's Inc., 323 F.2d 854 (6th Cir. 1963); Manok v. Southeast District Bowling Association, 306 F.Supp. 1215 (C.D.Cal. 1969); Molinas v. National Basketball Association, 190 F.Supp. 241 (S.D.N.Y. 1960). In Braun v. Berenson, 432 F.2d 538, 542 (5th Cir. 1970), the court stated:

"It is well established that an action for civil conspiracy under Section 15 accrues when an overt act violative of the antitrust laws is committed pursuant to the conspiracy which gives rise to new and independent damages to the person against whom the overt act is directed. Hanover Shoe, Inc. v. United Shoe Machinery Corp., M.D. Pa., 1965, 245 F.Supp. 258, aff'd in part, rev'd in part, 3 Cir., 1967, 377 F.2d 766, aff'd in part, rev'd in part, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed. 2d 1231 (1968); Peto v. Madison Square Garden Corp., 2 Cir., 1967, 384 F.2d 682, cert. den. 390 U.S. 989, 88 S.Ct. 1185, 19 L.Ed.2d 1293; Sherman v. Goerlich's, Inc., E.D.Mich., 1963, 238 F.Supp. 728, 730, aff'd 6 Cir., 1965, 341 F.2d 988, cert. den. 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74; Garelick v. Goerlich's, Inc., 6 Cir. 1963, 323 F.2d 854; Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196; Northern Kentucky Tel. Co. v. Southern Bell T. & T. Co., 6 Cir., 1934, 73 F.2d 333, 97 A.L. R. 133, cert. den. 294 U.S. 719, 55 S. Ct. 546, 79 L.Ed. 1251."

It is also well settled that the act complained of must cause damage to plaintiff.[2]

2. ". . . [i]f the statute of limitations were tolled, or an accrual of a suit set up by an overt act which did not cause damage, . . . it would effectively

■ Where a plaintiff alleges a continuing conspiracy causing continuing damage, the Statute of Limitations runs from the time "the blow which caused the damage was struck". Any injury occurring after the "blow is struck" is not relevant to the issue of when the Statute of Limitations commences to run, but rather affects only the problem of how much should be allowed in damages. Baldwin v. Loew's Inc., 312 F.2d 387 (7th Cir. 1963); Steiner v. 20th Century Fox Film Corp., 232 F.2d 190, 194–195 (9th Cir. 1956). It is clear, therefore, that the period of limitation is not extended merely because damages from the injury may be continuing.

■ Accordingly the Statute of Limitations begins to run each time plaintiff's interest is invaded to his detriment. In order for the plaintiff to be within the statutory limitation period, illegal "overt acts" of defendants must have occurred within the four year period immediately preceding December 2, 1969 and must have caused damage to plaintiff. See Peto v. Madison Square Garden Corp., *supra*.

■ The basic overt act alleged by plaintiff in his complaint is the failure of the NBA to draft him in 1961. It is clear that any cause of action arising from this event in 1961 is barred by 15 U.S.C. § 15b. Any continuing damage sustained by plaintiff because of this failure to draft him, assuming *arguendo* that an anti-trust violation does exist, would be irrelevant to bring this occurrence within the statutory period.

Plaintiff makes numerous allegations as to a continuing boycott directed toward him by the NBA, a professional negotiations list, and an arbitrary and capricious exclusion of plaintiff from NBA teams. The cases cited by plaintiff in his brief with regard to continuing boycotts deal with the substantive issue of the illegality of such boycotts, rather than the procedural issue of when the Statute of Limitations runs in such situations. It is clear to this Court, however, that the present case is more analogous to the "refusal to deal" cases, the crux of which is the rejection by defendant of a relation between the parties. As previously noted, the cause of action in such a case is deemed to accrue when the "blow which caused the damage was struck". Baldwin, supra; Zenith Radio Corp., supra. Plaintiff has alleged no overt acts on the part of defendant in support of these allegations other than the NBA's failure to draft plaintiff in 1961. As plaintiff has stipulated, he never applied to play in the NBA; he never requested a try-out with any NBA team; nor did he, in the eight year period between 1961 and 1969, ever communicate with any of the defendants to show any interest in becoming an NBA player.

■ Plaintiff did allege that on May 12, 1966, the NBA Board of Governor's passed a resolution stating that "any person who has associated with or who presently associates with 'known gamblers' would be barred from NBA employment." In order for this resolution to bring plaintiff's action within the Statute of Limitations, it must have caused damage to plaintiff. As plaintiff has not applied for NBA employment in either the five years preceding the resolution's passage or in the three years thereafter, it is very difficult for this Court to believe that plaintiff suffered damage by this resolution. Further, plaintiff has failed to supply this Court with a copy of the alleged resolution. NBA Commissioner Kennedy in his deposition expressly denied any knowledge of any resolution of the sort described in plaintiff's memorandum. Plaintiff has supplied this Court with a copy of the Minutes of May 11, 1966, NBA Board of Governor's Meeting, which contain a resolution related to the continuing investigation of the eligibility of Connie Hawkins to play in the NBA. This resolution, which this Court must deem to be the one referred to in plain-

destroy the statute of limitations as a statute of peace". Garelick v. Goerlich's Inc., 323 F.2d 854, 856 (6th Cir. 1963).

tiff's memorandum, clearly does not support his broad allegations of an NBA boycott against players who associate with "known gamblers".[3]

■ Under Rule 56, where a motion for summary judgment is made, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). This obligation to come forward with probative evidence is clearly not satisfied by mere unsupported factual assertions in a lawyer's memorandum. Rule 56 provides that where a party fails to respond to such motion by affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial, summary judgment, if appropriate, shall be entered against him. Here summary judgment for defendant with regard to the Statute of Limitation issue is clearly appropriate since the only alleged overt act damaging the plaintiff occurred eight years prior to the filing of the present action.

■ While it is clear that fraudulent concealment of an anti-trust action would toll the four year period of limitation, Allis-Chalmers Mfg. Co. v. Commonwealth Edison Co., 315 F.2d 558 (7th Cir. 1963), plaintiff has failed to allege any acts on the part of defendants which would constitute fraudulent concealment. Plaintiff has cited State of Illinois v. Sperry Rand, 237 F.Supp. 520 (N.D.Ill.1965) for the proposition that wrongdoers' who cloak their unlawful activities with secrecy should be barred from using a Statute of Limitations defense. On the other hand, it is settled that the mere failure of an injured party to timely discover the existence of a cause of action does not toll the Statute. Allis-Chalmers Mfg. Co., supra. In order for conduct on the part of defendants to amount to fraudulent concealment, plaintiff must bear the burden of showing not only a failure to discover a cause of action prior to expiration of the Statute of Limitations, but also the "exercise of due diligence and the fraudulent concealment, mistake or misrepresentation which frustrated it." Laundry Equipment Sales Corp. v. Borg-Warner Corp., 334 F.2d 788, 792 (7th Cir. 1964). There is no fraudulent concealment where plaintiff knew or by the exercise of due diligence could have known that he may have had a cause of action. City of Burlington v. Westinghouse Electric Corp., 246 F.Supp. 839 (D.C.Dist.1965). Thus, the plaintiff in the instant case has neither sufficiently alleged fraudulent concealment, nor presented any evidence of its existence.

## II. PLAINTIFF HAS NO CAUSE OF ACTION DUE TO HIS FAILURE TO REQUEST OR DEMAND EMPLOYMENT.

■ Since the plaintiff's cause of action is barred by the Statute of Limitations, there is no compelling need for this Court to reach the question of whether the plaintiff's action fails by reason of his failure to request or demand employment. However, if this Court were to rule upon the issue, it most likely would be of the opinion that the plaintiff failed to state a cause of action for any possible anti-trust violation since he did not make a demand or request for employment. In Milwaukee Towne Corp. v. Loew's Inc., 190 F.2d 561 (7th Cir. 1951), cert. denied, 342 U. S. 909, 72 S.Ct. 303, 96 L.Ed. 680

---

3. The plaintiff has attempted to draw a strong analogy between this case and the case of Cornelius Hawkins v. NBA, et al., Civil Action # 66–1320 (W.D.Pa., filed Nov. 3, 1966). The Hawkins case was settled around the time plaintiff Saunders filed his complaint in the present case. While both cases involve an anti-trust action based on the alleged conspiracy of the NBA to refuse to employ a basketball player who had been involved with known gamblers, the similarity stops there. Connie Hawkins was an exceptional player who actively negotiated with an NBA team for employment within a four year period before this action was filed.

(1952), the plaintiff alleged that defendant conspired to monopolize the exhibit of motion pictures in the Milwaukee area by giving first-run preferences to those theatres controlled by them. The plaintiff, however, did not ask the defendants for first-run pictures until December, 1946. In disallowing any recovery for the period prior to that date, the Court declared:

> "We know of no principle of law which authorizes a person aggrieved by the deprivation of a right either statutory or constitutional to recover for such deprivation in the absence of a demand or request for its exercise. With this thought in mind, we have carefully examined all the reported cases where damages have been sought in actions of the instant character against members of the motion picture industry and in other cases where the anti-trust laws were relied upon, and in all such cases it appears that the plaintiff sought in some manner to exercise the right of which it allegedly was deprived by the alleged conspiracy. . . . We are of the view that it cannot be held that defendants' conspiracy was the direct and proximate cause of plaintiff's damage because it was prevented from negotiating and obtaining first run pictures in the absence of a demand or request." 190 F.2d at 568.

Subsequent decisions have consistently held that there can be no recovery in an anti-trust action in the absence of a demand on the part of the plaintiffs.[4]

In Royster Drive-In Theatres, Inc. v. American Broadcasting-Paramount Theatres, Inc., et al., 268 F.2d 246 (2d Cir. 1959), the court stated:

> "As we have previously held, and recently reiterated: '[P]laintiffs cannot recover damages on account of any failure to obtain feature pictures for first-run exhibition unless they made demand for that of which they now claim they were deprived by the conspiracy.'" 268 F.2d at 251.

In several of the relevant cases, the plaintiff's failure to make the required demand resulted in granting of summary judgment for the defendants. See: 608 Hamilton Street Corp. v. Columbia Pictures Corp., 244 F.Supp. 193, 195 (E.D.Pa.1965); Rockaway Pix Theatre Inc. v. Continental Distributing Corp., 1964 Trade Cases, Par. 71,720 (E.D.N.Y.1964); Ryan v. The California Company, 1957 Trade Cases, Par. 68,651 (D. Mont.1957).

The plaintiff has stipulated that he never requested nor demanded employment. The only evidence of any official communication between plaintiff and the NBA and its member teams was two routine questionnaires sent to plaintiff prior to the 1961 NBA draft. As stipulated, the defendant never requested a try-out, nor was he ever informed that he could not try-out. Since his past college basketball record was not so outstanding that an offer by the NBA would have been a foregone conclusion, there is no evidence that a demand or request for employment would have been an unnecessary act. As the plaintiff has stipulated, over half the players who ranked above him during his last year in his college league were not drafted by the NBA and over two-thirds of those drafted by the NBA were not offered or did not accept contracts. In a successful action for refusal to deal, it is essential

---

4. *E. g.*, Lawlor v. National Screen Service Corp., 270 F.2d 146, 154 (3rd Cir. 1959); J.J. Theatres v. Twentieth Century-Fox Film Corp., 212 F.2d 840 (2d Cir. 1954); Webster Rosewood Corp. v. Schine Chain Theatres, 263 F.2d 533 (2d Cir. 1959), cert. denied, 360 U.S. 912, 79 S.Ct. 1296, 3 L.Ed.2d 1261 (1959); Vilastor Kent Theatre Corp. v. Brandt, 18 F.R.D. 199 (S.D.N.Y.1955); Sablosky v. Paramount Film Distributing Corp., 137 F. Supp. 929 (E.D.Pa.1955); Rockaway Pix Theatre Inc. v. Continental Distributing Inc., 1964 Trade Cases, Par. 71,270 (E.D.N.Y.1964); 608 Hamilton Street Corp. v. Columbia Pictures Corp., 244 F.Supp. 193 (E.D.Pa.1965); Ryan v. The California Company, 1957 Trade Cases, Par. 68,651 (D.Mont.1957); Congress Building Corp. v. Loew's Inc., 246 F.2d 587 (7th Cir. 1957).

that the plaintiff show that he has made a demand or request on the defendant. In the present case no refusal to deal has been shown. Such a deficiency would be fatal to plaintiff's anti-trust action.

## III. THE MOTION FOR SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE AND IS NOT BARRED BY PRIOR RULINGS OR THE PLAINTIFF'S RIGHT TO TRIAL BY JURY

### A. *The Nature of Summary Proceedings*

Plaintiff cites Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) for the proposition that:

> . . . summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.

The issues in the present case, *viz.* the plaintiff's failure to request employment and the applicability of the Statute of Limitations, are not issues involving questions of motive or intent. Plaintiff in his answer to the motion for summary judgment submitted no evidence as to the validity of his allegations and rested solely on his pleadings. Further, *Poller* must be read in light of the later Supreme Court decision, First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), in which the Court held that when a Rule 56(e) motion is made, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." As Rule 56(e) itself clearly provides, where a motion for summary judgment is made and the adverse party does not set forth specific facts showing that there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against him."

### B. *Prior Rulings in the Case*

Plaintiff's argument on this issue has already been rejected by this Court, which on January 18, 1972, denied plaintiff's motion to strike the present motion for summary judgment and granted plaintiff leave to file a response to the motion.

The prior denials of motions for summary judgment were based on the Court's determination of the existence of genuine issues of fact. All the denials were made prior to the stipulation of uncontested facts made by the parties on June 23, 1971 and July 1, 1971. Any dispute as to the facts now relevant has been resolved by the cited stipulations. This is sufficient reason to hold that the prior rulings are not controlling. A renewed motion for summary judgment can and should be entertained in the interest of effective judicial administration where the prior ruling is no longer controlling. Breeland v. Southern Pacific Co., 231 F.2d 576 (9th Cir. 1955); Brownfield v. Landon, 113 U.S.App.D.C. 248, 307 F.2d 389, (1962), cert. denied, 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962); Allstate Finance Corp. v. Zimmerman, 296 F.2d 797 (5th Cir. 1961).

### C. *Plaintiff's Right of Trial by Jury*

Where no material fact is controverted, there is no issue triable by a jury and summary judgment is proper. Fidelity & Deposit Co. v. United States, 187 U.S. 315, 23 S.Ct. 120, 47 L.Ed. 194 (1902). Summary judgment without jury trial in an anti-trust action where there is no material issue of fact does not infringe on plaintiff's right to a jury trial. Denver Rockets v. All-Pro Management, Inc., 325 F.Supp. 1049, 1062 (C.D.Cal.1971).

Accordingly, it is hereby ordered, adjudged, and decreed that defendant's motion for summary judgment is granted.