Earl CONWAY, Plaintiff,

v.

BULK PETROLEUM CORPORATION, a Delaware corporation, and Gulf Oil Corporation, a Pennsylvania corporation, Defendants.

No. 81 C 5081.

United States District Court,
N. D. Illinois, E. D.

Aug. 12, 1982.

Melvyn Segal, Chicago, Ill., for plaintiff.

Herbert Morton, Concannon, Dillon, Snook & Morton, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Earl Conway ("Conway") brought this eight-count action against defendants Bulk Petroleum . Corp. ("Bulk") and Gulf Oil Corp. ("Gulf") alleging that defendants engaged in a conspiracy to fix prices and restrict independent dealers' opportunity to sell competing products in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, section 3 of the Clayton Act, 15 U.S.C. § 14 and section 3 of the Illinois Antitrust Act, Ill.Rev.Stat.1981, ch. 38, § 60–3.[1] Conway seeks treble damages for losses sustained as the result of this conspiracy, costs, attorneys' fees and permanent injunctive relief. Presently before the Court is defendants' motion for summary judgment. Fed.R.Civ.P. 56(b). For the following reasons, defendants' motion will be granted.

Conway operated an E–Z Go gasoline service station on premises leased from Bulk, a wholly-owned subsidiary of Gulf. His year-to-year lease commenced on January 2, 1973, and was terminated on September 16, 1976. On the date of termination, Conway and Bulk executed an agreement which purportedly terminated the lease and related supply contracts between Conway and Bulk and released Bulk from all claims and causes of action which Conway might have against Bulk. Conway alleges that during the term of the lease, defendants engaged in a conspiracy to fix the wholesale price of gasoline sold to Conway and the retail price at which Conway could sell gasoline to consumers. Conway also alleges that defendants unlawfully required him to purchase gasoline, petroleum products and milk and tobacco products as a condition of renewing the lease.

Defendants argue that they are entitled to judgment as a matter of law for two reasons. First, the defendants assert that this action is time barred by 15 U.S.C. § 15b and Ill.Rev.Stat.1981 ch. 38, § 60–7(2). Alternatively, defendants argue that the release executed between the parties bars Conway from asserting these claims. Conway argues, on the other hand, that neither the statutes of limitation nor the release bars this action because defendants fraudulently concealed their conspiracy to drive independent dealers out of business. Defendants' fraud, Conway asserts, tolls the running of the applicable statute of limitations and invalidates the release.[2]

■ The statute of limitations applicable to private suits brought under the federal antitrust laws provides:

Any action to enforce any cause of action under sections 15, 15a or 15c of this title shall be forever barred unless commenced

---

**1.** Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1337 and 1391, as well as 15 U.S.C. §§ 15, 22 and 26.

**2.** Our disposition of the statute of limitations issue, *infra*, obviates the need for the Court to examine the validity of the release.

within four years after the cause of action accrued. . . .

15 U.S.C. § 15b (1977 Supp.). Similarly, Illinois law bars any antitrust action brought more than four years after the cause of action accrued. Ill.Rev.Stat.1981, ch. 38, § 68–7(2). An injured party's failure to discover the existence of a cause of action within the limitations period does not toll the statute. *Allis-Chalmers Manufacturing Co. v. Commonwealth Edison Co.,* 315 F.2d 558, 562 (7th Cir. 1963); *Kansas City, Missouri v. Federal Pacific Electric Co.,* 310 F.2d 271, 277–80 (8th Cir.), *cert. denied,* 371 U.S. 912, 83 S.Ct. 257, 9 L.Ed.2d 171 (1962); *Saunders v. National Basketball Assoc.,* 348 F.Supp. 649, 654 (N.D.Ill.1972).

█ In the present case, the unlawful conduct and injury of which plaintiff complains occurred prior to or simultaneous with the termination of Conway's lease in September, 1976. This action was filed on September 9, 1981, almost five years after the plaintiff's cause of action accrued. In order to avoid the bar of statute of limitations, therefore, Conway must establish that (1) Gulf and Bulk fraudulently concealed the nature and substance of their unlawful conduct from plaintiff, (2) defendants were successful in their efforts to conceal their conduct, and (3) his failure to discover defendants' unlawful conduct was not the result of his own absence of due diligence. *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 555 (4th Cir. 1974). Cf. *Baker v. F & F Investment,* 420 F.2d 1191, 1199

(7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970); *Laundry Equipment Sales Corp. v. Borg-Warner Corp.,* 334 F.2d 788, 792 (7th Cir. 1964). Conway's bald allegations of conspiracy and fraud are not sufficient, however, to toll the running of the limitations period under the fraudulent concealment doctrine. *Baker, supra,* 420 F.2d at 1198; *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir. 1969).

█ Viewing the facts in the light most favorable to Conway, *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), the most that can be said in support of his argument is that plaintiff was not aware of the underlying purpose of defendants' pricing and supply policies during the term of his lease.[3] Conway purportedly learned of defendants' intention to drive independent gasoline dealers out of business in a conversation with the former president of Bulk Petroleum in late 1978 or early 1979. Conway's subsequent discovery of defendants' purpose does not, however, establish fraudulent concealment. Indeed, during the time he operated the service station, Conway was aware of the objective facts underlying defendants' unlawful price-fixing and various tying arrangements. Conway does not allege that defendants fraudulently concealed from him any substantive element of these violations.[4]

Although entitled to all reasonable inferences in his favor, Conway cannot escape the bar of the statute of limitations merely

---

**3.** Put another way, plaintiff may be attempting to argue that he was not aware of a conspiracy between Bulk and Gulf, regardless of defendants' purpose or motive. Conway does not contend, however, that the existence of an agreement between defendants was fraudulently concealed from plaintiff. Defendants' mere nondisclosure of the existence of their agreement does not toll the running of the statute of limitations. *King & King Enterprises v. Champlin Petroleum Co.,* 446 F.Supp. 906, 912 (E.D.Okla.1978). Moreover, there is no dispute that plaintiff was aware of the close relationship between Gulf and Bulk for the purpose of supplying gasoline and other products. Cf. *El Paso v. Darbyshire Steel Co.,* 575 F.2d 521, 524 (5th Cir. 1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Whether Conway had actual or affirmative evidence of a

conspiracy in 1976, the facts and circumstances of his relationship with Gulf and Bulk should certainly have put him on notice of the likelihood of an agreement governing E–Z Go prices and supplies. Plaintiff chose not to pursue this matter, however, until 1981.

**4.** In his response brief, Conway presents evidence that Bulk "purge[d] and destroy[ed] material removed from dealer files concerning pricing and pressure on dealers." Plaintiff's Response, p. 2. Although reprehensible if true, this conduct does not evidence fraudulent concealment of material information from the dealers. Presumably, dealers (including plaintiff) were aware of the pressures placed upon them by defendants.

by alleging fraud and conspiracy. Accordingly, defendants' motion for summary judgment is granted. It is so ordered.