John L. LANCIANESE; Carolyn S. Lancianese, Appellants,

v.

BANK OF MOUNT HOPE; Alan L. Susman, E.L. Mohler; John W. Straton, Appellees.

No. 85–1315.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1985.

Decided Feb. 13, 1986.

Rehearing and Rehearing En Banc Denied April 8, 1986.

Willard Sullivan, Charleston, W.V. (Carl M. Duttine, Dunbary, W.V., on brief), for appellants.

Thomas B. Bennett (Bowles, McDavid, Graff & Love, Winfield T. Shaffer, Shawn P. George, Jackson, Kelly, Holt & O'Farrell, Charleston, W.V., on brief), for appellees.

Before WIDENER and ERVIN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

MOTZ, District Judge:

John and Carolyn Lancianese brought this action against the Bank of Mount Hope, Alan L. Susman and E.L. Mohler (two of the Bank's officers and directors) and John W. Straton (a mining engineer). The Lancianeses alleged violations of the anti-tying provisions of the Bank Holding Company Act (12 U.S.C. Section 1972) and

related state common law torts. The district court granted the defendants' motion for summary judgment as to the Lancianeses' federal claim on the ground of limitations and dismissed the pendent state claims. We affirm.

 The purpose of Section 1972 is "to prohibit anti-competitive [banking] practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service that they desire." S.Rep. No. 1084, 91st Cong. 2d Sess., *reprinted in* 1970 *U.S. Code Cong. & Ad.News* 5519, 5535. *See Flintridge Station Assoc. v. American Fletcher Mortgage Co.,* 761 F.2d 434, 437 (7th Cir.1985); *Parsons Steel, Inc. v. First Alabama Bank,* 679 F.2d 242, 245 (11th Cir.1982). It provides as follows:

(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

(B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;

(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;

(D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or

(E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose a credit transaction to assure the soundness of the credit.

The Board may by regulation or order permit such exceptions to the foregoing prohibition as it considers will not be contrary to the purpose of this chapter. 12 U.S.C. Section 1972(1).

The Lancianeses filed their complaint on June 23, 1982, alleging that when Tamroy Mining, Inc., a corporation of which they were the principals, received a loan of $400,000 (later increased to $600,000) from the bank, they were required to make a series of collateral agreements with the individual defendants. Allegedly, the following conditions were attached to the loan: (1) Mohler and Straton were to receive 35% of the stock of Tamroy and 100% voting trust agreement effective upon default; (2) a coal mining lease held by Tamroy was to be assigned to Raleigh Acceptance Corporation, a newly formed corporation controlled by Susman, Mohler and Straton; (3) RAC was to sublease the coal back to Tamroy; (4) RAC was to act as the sales agent for coal mined by Tamroy; (5) RAC was to build a piece of equipment known as a "tipple" for Tamroy's coal processing and a coal loading fee was to be paid by Tamroy to RAC; (6) the Lancianeses were to indemnify Mohler and Straton against any liability arising out of a pending law suit against Tamroy and the Lancianeses; and (7) salaries were to be paid to Susman, Mohler and Straton.

For the purpose of argument only, appellees have admitted the allegations made by the Lancianeses. They contend, however, that all of the alleged conditions attached to the loan ended no later than April 3, 1978, and that the Lancianeses' claims are therefore barred by the four-year limitations provision of 12 U.S.C. Section 1977(1). They rely in large part upon Mr. Lancianese's own deposition testimony to that effect. According to Mr. Lancianese's testimony, by April 3, 1978 all of the Tamroy stock had been transferred back to the Lancianeses, Tamroy had ceased its mining operations, all fees to RAC and the salaries

to Susman, Mohler and Straton had been paid and all agreements with RAC had terminated.

The Lancianeses and the individual defendants all personally guaranteed Tamroy's obligations under the loan. In 1980 the individual defendants repaid the loan which was then in default. At that time they obtained from the Lancianeses, in exchange for a release, various assets which the Lancianeses then owned, including the Tamroy stock which had been retransferred to them. The transfer of their assets was not a condition of any loan from the Bank but part of a settlement between the various guarantors. Nevertheless, the Lancianeses contend that this transfer—which they say finally ruined them financially—triggered the running of the statute of limitations. They rely upon the "continuing violation" and the "speculative damages" doctrines which have become part of limitations law in the antitrust field.

■■■ In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), the Court held that each time a plaintiff is injured by a defendant's act in a continuing conspiracy to violate the antitrust laws, a cause of action accrues to him to recover damages caused by that act. Limitations accordingly run from the date that each such act is committed. However, *Zenith* applies only where there is an overt act in furtherance of an antitrust conspiracy or a separate substantive violation which is committed within the limitations period. *See Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570 (4th Cir.1976). It is not sufficient that the plaintiff may have suffered the damages caused by the defendant's violation within the limitations period. *See, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir.1982); *Barnosky Oils, Inc. v. Union Oil Co.*, 665 F.2d 74 (6th Cir.1981). Here, the violations of the Bank Holding Company Act alleged by the Lancianeses occurred in 1973 and continued no later than April 3, 1978. The fact that the Lancianeses did not suffer the final

harm caused by these acts until 1980 is of no consequence.

■■■ The Lancianeses' reliance upon the "speculative damages" doctrine is also misplaced. By April 3, 1978, they knew the full amount of the fees and salaries which they allege were wrongfully paid. They also knew that Tamroy's business had failed allegedly because revenues had wrongfully been siphoned off to the individual defendants. Clearly, knowing these facts, the Lancianeses could have reasonably ascertained their damages and presented competent proof of them. The "speculative damages" doctrine is therefore inapplicable. *See Charlotte Telecasters, Inc.*, 546 F.2d at 573.

For these reasons, the district court properly entered summary judgment on behalf of the defendants on the Bank Holding Company Act claim. The dismissal of the pendent claims was likewise proper. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The judgment is, accordingly,

AFFIRMED.