**Harvey JACKSON and Roger Jackson, Plaintiffs,**

v.

**UNION NATIONAL BANK OF MACOMB, a national banking association, Defendant.**

No. 89–1084.

United States District Court, C.D. Illinois, Peoria Division.

June 26, 1989.

Patricia A. Walton, Lucie & Carper, Macomb, Ill., for plaintiffs.

Lawrence J. Kwacala, Flack, Kwacala, Murphy & Ashenhurst, Macomb, Ill., for defendant.

## ORDER

MIHM, District Judge.

Presently before the Court is the Motion of Defendant, Union National Bank of Macomb (hereinafter "Union"), for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The basis of Union's Motion is that this case was instituted after the expiration of the applicable statute of limitations. The Court concurs and hereby GRANTS Union's Motion.

## FACTS

On March 31, 1989, Plaintiffs, Harvey Jackson and Roger Jackson, filed a Complaint in this case in which they sought damages for alleged violations of the Bank Holding Company Act Amendments of 1970, 12 U.S.C. §§ 1971 *et seq.* Plaintiffs, who are brothers, each owned an undivided one-half interest in a 40–acre tract of real estate. In their Complaint, the Jacksons assert that in or around July 1981, Union advised Harvey Jackson that, in order for him to receive renewals for two promissory notes held by Union, Roger Jackson would have to execute a mortgage and note to Union. The purpose of the mortgage was to have Roger Jackson provide his one-half interest in the real estate as security for the notes which his brother sought to renew. Plaintiffs further allege that Union's loan officer, Nye Bouslog, represented to them that only Harvey Jackson's acreage would be secured and that only Harvey Jackson would be liable on the promissory note. Harvey Jackson claims that he would not have had his brother execute the security documents had Harvey known that such action would encumber Roger's undivided one-half interest in the real estate.

In September 1983, Union began liquidating Harvey Jackson's assets in order to obtain repayment on the notes. On June 11, 1984, Harvey Jackson filed a Chapter 13 bankruptcy petition in which he named Union as a secured creditor. Pursuant to that petition, payments were made to Union until early 1986. The monies that Union received from Harvey Jackson did not, however, repay his entire debt to Union. As a result, Union instituted foreclosure proceedings against the Jackson brothers in the Circuit Court of McDonough County, Illinois. On December 11, 1986, that court entered a decree of foreclosure against the Jacksons.

According to Plaintiffs, prior to December 11, 1986, they were completely unaware of any potential personal liability that Roger Jackson might have with respect to the documents executed in July 1981. According to the Jacksons, Union made no attempts prior to December 1986 to collect from Roger Jackson any payments due and owing under the terms of the promissory notes executed in 1981.

## DECISION

The applicable statute of limitations for violations of the Bank Holding Company

Act Amendments of 1970 is found at 12 U.S.C. § 1977. That statute states as follows:

*Limitations of Actions; Suspension of Limitations*

1. Subject to paragraph (2) of this section, any action to enforce any cause of action under this chapter shall be forever barred unless commenced within four years after the cause of action accrued.

2. Whenever any enforcement action is instituted by or on behalf of the United States with respect to any matter which is or could be the subject of a private right of action under this chapter, the running of the statute of limitations in respect of every private right of action arising under this chapter and based in whole or in part on such matter shall be suspended during the pendency of the enforcement action so instituted and for one year thereafter: *Provided,* That whenever the running of the statute of limitations in respect of a cause of action arising under this chapter is suspended under this paragraph, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within the four year period referred to in paragraph (1) of this section.

12 U.S.C. § 1977. There is no dispute between the parties to this case that, because no enforcement action by or on behalf of the United States has been instituted against Union, the provisions of 12 U.S.C. § 1977(2) have no application in this case. As a result, the focus of the Court's inquiry is whether the Jacksons' filing of this lawsuit on March 31, 1989 satisfies the four year statute of limitations provided in 12 U.S.C. § 1977(1). Union argues that the 1989 filing does not satisfy the four year limitations period and that the statute of limitations expired in July 1985—four years

after Roger Jackson executed the mortgage and note to Union. This Court agrees.

The United States Court of Appeals for the Seventh Circuit has not interpreted the statute of limitations applicable to the anti-tying provisions of the Bank Holding Company Act, but the Fourth Circuit, in *Lancianese v. Bank of Mt. Hope,* 783 F.2d 467 (4th Cir.1986), held that the four year statute of limitation begins to run no later than the date on which a bank's alleged violations end. According to the *Lancianese* Court, the fact that the bank customers do not suffer the final harm caused by the bank's conduct until some later time is irrelevant to the determination of whether their claim against the bank is time barred. *Id.* at 470.

Although the Seventh Circuit has not directly addressed the statute of limitations question with respect to the anti-tying provisions of the Bank Holding Company Act, that Court has ruled that those provisions should be treated in a manner similar to the anti-tying provisions of the antitrust laws. In *Exchange Nat'l Bank of Chicago v. Daniels,* 768 F.2d 140 (7th Cir.1985), the Seventh Circuit stated:

This court has construed § 1972 as prohibiting exclusive dealing practices— those that attempt to prevent customers from dealing with other banks. *McCoy v. Franklin Savings Assn.,* 636 F.2d 172, 175 (7th Cir.1980). It is similar to other anti-tying laws meant to preserve competition among rival businesses. We treat it, in other words, as the banking equivalent of § 3 of the Clayton Act, 15 U.S.C. § 14.

*Id.* at 143. Accordingly, this Court will look to the Seventh Circuit rulings on the statute of limitations governing anti-tying cases in the context of the Clayton Act.[1]

---

**1.** The Jacksons would have this Court apply the rule that the statute of limitations does not begin to run until the claimant has discovered, or has had reasonable opportunity to discover, all of the essential elements of his cause of action. In support of their position, the Jacksons cite *De Witt v. United States,* 593 F.2d 276 (7th Cir.1979) and *Dzenits v. Merrill Lynch,* 494 F.2d 168 (10th Cir.1974). The Jacksons fail to

explain why their anti-tying cause of action under the Bank Holding Company Act is analogous to the medical malpractice claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* at issue in *De Witt* or the *Dzenits* securities fraud action under 15 U.S.C. § 78. The reason for the *De Witt* Court's adoption of the "knew or should have known" standard in medical malpractice cases under the Federal Tort Claims Act

The statute of limitations governing anti-tying causes of action under the Clayton Act is contained in 15 U.S.C. § 15b. That section states as follows:

Any action to enforce any cause of action under §§ 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this Act shall be revived by this Act.

15 U.S.C. § 15b. There is no question that, absent tolling for one reason or another, the four year antitrust statute of limitations begins to run at the time that the alleged violation occurs. *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 268 (7th Cir.1984). In the context of this case, that principle would mean that the statute would begin to run in July 1981 and expire four years later unless there is reason to toll the limitations period.

The Jacksons seem to argue that the four year limitations period was tolled because they were not aware of the alleged violation until December 1986, so that the limitations period began to run at that time. Such a result does not jibe with the Seventh Circuit's interpretation of the antitrust laws. In *Brunswick*, the Seventh Circuit rejected a construction of the antitrust laws which would allow a tolling of the statute of limitations until the time that the antitrust victim suffers a loss. In that case, the Court explained that:

Exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs ... even though, in the nature of things, the victim's losses lie mostly in the future ...

In some cases, ... the plaintiff may be able to show that his future losses were so speculative at the time of the exclusion that a judge or jury would not have been allowed to award damages for those losses at that time, in which event the plaintiff may and indeed must wait to sue.... But unless special circumstances preclude, as excessively speculative, an award of damages based on predicated as distinct from realized losses due to the defendant's misconduct, the statute of limitations is not tolled simply in order to wait and see just how well the defendant does in the market from which he excluded the plaintiff. Otherwise it would be tolled indefinitely in a very large class of antitrust suits.

*Id.* at 271 (citations omitted).

In *Conway v. Bulk Petroleum Corp.*, 545 F.Supp. 398 (N.D.Ill.1982), another anti-tying case under the Clayton Act, the court granted summary judgment in defendants' favor based on the statute of limitations bar. The plaintiff in *Conway* contended that the statute should have been tolled due to the defendants' fraudulent concealment of their unlawful conduct, but his position was rejected by the Court. The Court noted that the plaintiff was aware of the objective facts underlying the defendants' various alleged tying arrangements prior to the expiration of the limitations period. The most that could be said in support of the plaintiff's position was that he was not aware of the purpose underlying the defendants' conduct until after the four year limitations period had expired. *Id.* at 400. Yet, according to the *Conway* Court, the plaintiff's subsequent discovery of the defendants' purpose did

was that court's belief that, although a plaintiff in such a case may become aware, within the statutory period, that his injury is the result of negligent conduct, he may not be aware that that conduct is attributable to the defendant. *De Witt*, 593 F.2d at 279. It is difficult to see how the Jacksons could make an analogous argument here.

*Dzenits* is also of no help to the Jacksons. Although the *Dzenits'* opinion does not specifically so state, the reason for the application of the "knew or should have known" standard in that case appears to be the fact that the Oklahoma

statute of limitations for security fraud claims expressly provided that such a standard be applied. As the *Dzenits* Court noted, "There is no dispute about the fact that the Oklahoma two year statute [of limitation] applies. It is equally clear that the statute starts to run from the date of actual or constructive discovery of the fraud." *Dzenits*, 494 F.2d at 171. The relevant statute of limitations here, 12 U.S.C. § 1977(1), contains no similar provision. This Court rejects the Jacksons' proposal to apply an actual or constructive knowledge theory to the limitations question at issue here.

not allow an extension of the four year statutory period.

Applying the *Brunswick* and *Conway* principles to the facts of this case, this Court finds that the Jacksons' cause of action is time barred. As found by the court in *Lancianese,* the four year statute of limitations governing anti-tying provisions of the Bank Holding Company Act Amendments begins to run no later than the date on which a bank's alleged violations ended. The fact that a bank customer does not suffer injury as a result of the alleged violation until some time later does not toll the running of the statute of limitations. Accordingly, the statute of limitations in this case expired four years after the day that Union required Roger Jackson to execute the note and mortgage in July 1981; that is, it expired in July 1985.

 Plaintiffs attempt to claim that Bouslog's representations that Roger Jackson's undivided one-half interest in the real estate would not be placed at risk constitutes a basis for tolling the statute of limitations.[2] This Court, as the *Conway* Court, must reject that position. As in *Conway,* during the period prior to the foreclosure proceedings, the Jacksons were aware of the objective facts underlying Union's alleged unlawful tying arrangements. The mere fact that the Jacksons were unaware of Union's purpose in having Roger Jackson execute the security documents does not amount to a fraudulent concealment. The failure of an injured party to discover the existence of a cause of action within the limitations period does not toll the statute. *Allis Chalmers Mfg. Co. v. Commonwealth Edison Co.,* 315 F.2d 558, 562 (7th Cir.1963). If Union illegally tied its renewal of credit to Harvey Jackson in a manner prohibited by the Bank Holding Company Act Amendments, Union did so in July 1981. The mere fact that Roger Jackson did not feel the ramifications of the

claimed violation until five and one-half years later does not excuse the Jacksons' failure to discover their potential claim. This case is time barred, and Union is entitled to summary judgment.

## CONCLUSION

The anti-tying provisions of the Bank Holding Company Act prohibit exclusive dealing practices. *See,* 12 U.S.C. § 1972(1). If Union violated that statute at all, it did so at the time of the transaction in July 1981, despite the fact that Roger Jackson suffered no supposed injury from that conduct until 1986. (This Court calls Roger Jackson's injury "supposed" because, as noted by the *Exchange Nat'l Bank* Court, "Section 1975 [of the Bank Holding Company Amendments] permits a treble damages action by an injured party, but an obligation to pay back a loan actually made is not an injury." *Exchange Nat'l Bank,* 768 F.2d at 144. In other words, it is questionable whether Roger Jackson suffered any anti-tying injury at all. That question is not presently before the Court, though, so the Court will not discuss it further.)

The Court finds that this case was instituted after the expiration of the statute of limitations. Defendant's Motion for Summary Judgment is GRANTED. The Clerk is directed to enter final judgment for Defendant.

It is so ordered.

---

2. Because Plaintiffs are the non-movants on this summary judgment motion, this Court must construe all of the facts in the light most favorable to them. The Jacksons make the Court's task a difficult one. Basically, they allege that Union refused to renew Harvey Jackson's notes unless Roger Jackson's interest in the real estate

was given to Union as additional security, but that Bouslog told them that Roger's interest would not be at risk. As contradictory as the Bank's alleged representations are, the Jacksons evidently believed that they were true. So, for the purposes of this motion, the Court will try to believe them, too.