Dennis J. HALVERSON, Plaintiff-Appellant,

v.

James J. TYDRICH, M.D., Milfred A. Cunningham, M.D., Richland Hospital, Inc., and The Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 89-0621. Submitted on briefs October 12, 1989.—Decided March 29, 1990.*

(Also reported in 456 N.W.2d 852.)

For the plaintiff-appellant the cause was submitted on the briefs of *Johnson, Swingen, Atterbury, Riley & Luebke, S.C.,* by *Robert A. Pretto* of Madison.

For the defendants-respondents, Dr. James J. Tydrich and Wisconsin Patients Compensation Fund,

the cause was submitted on the briefs of *Boardman, Suhr, Curry & Field,* by *Catherine M. Rottier* and *Bradway A. Liddle* of Madison.

For the defendant-respondent, Dr. Milfred Cunningham, the cause was submitted on the briefs of *Jenswold, Studt, Hanson, Clark & Kaufmann,* by *Robert R. Studt* and *Allen A. Arntsen* of Madison.

For the defendant-respondent, Richland Hospital, Inc., the cause was submitted on the briefs of *Bell, Metzner, Gierhart & Moore, S.C.,* by *Steven J. Caulum, Thomas A. Lockyear* and *Patricia A. Dicke* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Dennis Halverson appeals from a summary judgment dismissing his medical malpractice action against Dr. James Tydrich, Dr. Milfred Cunningham, Richland Hospital, Inc., and the Wisconsin Patients Compensation Fund.[1] Halverson was born on October 2, 1968. He was last treated by any of the defendants on September 18, 1981, when he was just under thirteen years old. The trial court ruled that the action was barred by the statute of limitations, secs. 893.55 and 893.56, Stats.[2]

---

[1]Richland Hospital filed an appellate brief separate from that of the other defendants. Because the Wisconsin Patients Compensation Fund has not taken any position distinct from Tydrich and Cunningham, we make no further reference to the fund.

[2]Section 893.55 provides in relevant part:

> (1) Except as provided by sub [ ]. (2) . . ., an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
> (a) Three years from the date of the injury, or
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except

We deem the issues to be whether (1) the finder of fact could reasonably infer that the defendants concealed from Halverson an act or omission by the defendants which resulted in injury to him and (2) secs. 893.55 and 893.56, Stats., are unconstitutional as applied to Halverson because he was a minor when the alleged malpractice occurred. We conclude that summary judgment dismissing the complaint was proper only as to the defendant hospital. An issue of fact for trial exists concerning whether Drs. Tydrich and Cunningham concealed their alleged negligent acts or omissions. The statutes are constitutional as applied to Halverson. We therefore affirm that part of the judgment dismissing the complaint as to the hospital and reverse that part of the judgment dismissing the complaint as to the doctors.

## 1. SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS DEFENSE

that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

(2) If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1), whichever is later.

Section 893.56 provides:

Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by a health care provider within the time limitation under s. 893.55 or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section.

Summary judgment is governed by sec. 802.08, Stats. The methodology for reviewing summary judgment motions has been stated in many cases, such as *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-77 (1980). We need not repeat it. Our review is *de novo* and independent of the trial court's decision. *Id.*

Halverson's complaint alleges his birthdate and that on November 18, 1980 he was admitted to the Richland Hospital and treated by the hospital, Dr. Tydrich, and Dr. Cunningham. The complaint does not describe the relationship between the hospital and the doctors. He alleges that all of the defendants negligently treated him and that the doctors provided negligent follow-up care. He first discovered his cause of action in December 1986. We conclude that the complaint states a claim. Each defendant denied negligence and pleaded that the statute of limitations barred Halverson's action. The pleadings raise issues of fact.

It is undisputed that on December 11, 1987 Halverson filed a request for mediation with the administrator of the medical mediation system. That filing tolled the statute of limitations, sec. 655.44(4), Stats., and fixes the date as of which we review the timeliness of Halverson's action under secs. 893.55 and 893.56, Stats.

The three defendants jointly moved for summary judgment. Drs. Tydrich and Cunningham submitted their affidavits to support the motion. Their affidavits make no effort to establish any defense to Halverson's claim other than the statute of limitations. Dr. Tydrich states that Halverson was admitted to the hospital on November 18, 1980 with a fracture of the distal left tibia and fibula. He was released from the hospital the next day. Dr. Tydrich last treated Halverson on March 24, 1981. Dr. Cunningham avers that he saw Halverson on

only three occasions: November 19, 1980 shortly before his fracture was casted; March 25, 1981; and September 18, 1981.

Thus, the last date that any defendant treated Halverson was September 18, 1981, more than five years before December 11, 1987, the date Halverson filed his mediation request. Halverson's action is therefore *prima facie* barred as to all three defendants under sec. 893.55(1)(b), Stats., regardless of the date Halverson discovered his injury. The five-year limitation in that subsection is a statute of repose and bars an action without regard to the date of discovery. Section 893.56 makes the five-year limitation in sec. 893.55 applicable to those who were either minors or adults at the time of injury.

We turn to Halverson's counteraffidavit and those submitted on his behalf. Nothing in those affidavits controverts any fact stated in defendants' supporting affidavits. Because the doctors' affidavits supporting the motion for summary judgment deal only with the statute of limitations defense, whether the defendants were negligent is not an issue. For purposes of summary judgment analysis, we assume the defendants were negligent. The only question is whether a disputed issue of fact exists as to the statute of limitations defense. Halverson's counteraffidavits are properly confined to that defense.

Halverson's counteraffidavits rely on the concealment provision in sec. 893.55(2), Stats. The limitation period under that statute is one year from the date that the patient discovered or should have discovered that the care provider "concealed" from the patient the provider's "prior act or omission . . . which has resulted in injury to the patient."

We reject defendants' argument that because Halverson did not plead concealment, he cannot raise the issue in his counteraffidavits to avoid their limitations defense. The supreme court rejected a similar argument in *Poeske v. Estreen,* 55 Wis. 2d 238, 245, 198 N.W.2d 625, 629 (1972) (footnotes omitted):

> Ordinarily, estoppel is to be specifically pleaded. So it might be argued that plaintiff should have filed a reply to defendant's affirmative defense of the limitations statute barring recovery. However, in this state a reply is not permitted to an answer where it includes no counterclaim or seeking of affirmative relief. (Sec. 263.20, Stats. [1971].) Therefore, it was neither possible nor necessary for the plaintiff to plead the defense of equitable estoppel in a reply.

Section 802.01(1), Stats., provides in relevant part: "There shall be a complaint and an answer [and] a reply to a counterclaim denominated as such . . .. No other pleading shall be allowed, except that the court may order a further pleading to a reply or to any answer." Since the record fails to disclose that he was ordered to do so, it was neither possible nor necessary for Halverson to plead the concealment provision in sec. 893.55(2), Stats., by way of reply to defendants' answer.

We therefore examine the counteraffidavits Halverson submitted. The question is whether those affidavits aver evidentiary facts which, if proven at trial, would entitle a trial court or jury to find concealment.

Halverson avers that he injured his ankle in November 1980. He was treated at the Richland Hospital. Medical records submitted through the affidavit of Halverson's attorney show that Dr. Tydrich consulted with Dr. Cunningham at the hospital and he recommended a casting for Halverson's left leg. On November 19, 1980,

Dr. Tydrich casted his left leg. Halverson's supporting affidavits do not show that he ever returned to the Richland Hospital after the initial visit when Dr. Tydrich casted the leg. While Halverson's complaint does not specify the manner in which defendants' medical treatment was negligent, it appears that Dr. Cunningham's negligent advice to Dr. Tydrich and Dr. Tydrich's negligent casting of Halverson's leg are the "acts or omissions" which Halverson claims occurred and were concealed from him. Halverson states that he received follow-up care from Dr. Tydrich through March 24, 1981.

Halverson's and his mother's affidavits state that he began to experience difficulties with his ankle during the follow-up care. His foot turned outward, causing pain and walking difficulties. They aver that both doctors said his problems would eventually go away, that Dr. Tydrich gave that opinion first, and that Dr. Tydrich then referred Halverson to Dr. Cunningham. In March and September 1981, Dr. Cunningham told Halverson nothing was physically wrong with the foot and ankle. In September 1981, Dr. Cunningham blamed the problem on the way Halverson walked.

Halverson avers that his foot problems continued through December 16, 1986, when a doctor at the University of Wisconsin Hospital treated him for a possible neurological problem. That doctor noticed the rotation of Halverson's left foot and referred him to orthopedic surgeon Dr. Alan Breed. Dr. Breed examined Halverson and informed him of the need for corrective surgery to his ankle. Having that information, Halverson and his mother began to suspect that his problems were due to improper medical care provided by the three defendants. Dr. Breed performed the corrective surgery in February 1987.

Halverson submitted an affidavit by Dr. Breed. That doctor avers that when he saw Halverson in December 1986, he noted Halverson had an external rotation deformity at the left ankle. Dr. Breed opines in his affidavit that any other orthopedic surgeon should have recognized that Halverson suffered from an external rotation deformity, an anatomical defect, which might require treatment including corrective surgery. Medical records signed by Dr. Breed state that "[a]pparently, the ankle fracture was casted with the foot in external rotation and healed that way."

Summary judgment should not be granted if "reasonable inferences leading to conflicting results can be drawn from undisputed facts." *Maynard v. Port Publications, Inc.,* 98 Wis. 2d 555, 563, 297 N.W.2d 500, 505 (1980) (quoting *Jones v. Sears Roebuck & Co.,* 80 Wis. 2d 321, 325, 259 N.W.2d 70, 71 [1977]). If the evidentiary facts submitted by affidavit will under any reasonable view allow an inference in support or denial of a claim of either party, "it is for the trier of fact to draw the proper inference and not for the court to determine on summary judgment which of the two or more permissible inferences should prevail." *Fischer v. Mahlke,* 18 Wis. 2d 429, 435, 118 N.W.2d 935, 939 (1963).

As we have said, Dr. Breed's affidavit partly pertains to what in his opinion any orthopedic surgeon should have recognized concerning Halverson's ankle. It is reasonable to infer that Dr. Cunningham is an orthopedic surgeon. The medical records show that Halverson was admitted to the hospital for "orthopedic consult[ation] and care." The records also establish that Dr. Cunningham advised Dr. Tydrich that Halverson "did not need specialized orthopedic care unless there were some problems at a later date."

We nevertheless ignore Dr. Breed's opinion for purposes of ruling on the summary judgment motion before us. The summary judgment statute provides in relevant part that supporting and opposing affidavits must set forth "evidentiary facts." Sec. 802.08(3), Stats.[3] The facts critical to Halverson's concealment claim are whether Drs. Cunningham and Tydrich "concealed" their prior acts or omissions from Halverson.

Concealment is an intentional failure to disclose. It requires actual knowledge of the thing concealed. The question is whether when Dr. Cunningham saw Halverson after his cast had been removed, Dr. Cunningham recognized that Halverson had an external rotation deformity, not whether he should have done so.

That does not end our analysis. Although Dr. Breed's affidavit contains opinion, it also states evidentiary facts. That the affidavit contains opinion does not make it wholly nonevidentiary. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 122, 334 N.W.2d 580, 585 (Ct. App. 1983). We treat the factual parts of the affidavit as true for purposes of summary judgment analysis. *Will v. Jessen,* 273 Wis. 495, 498, 78 N.W.2d 905, 907 (1956).

Dr. Breed states that when he first saw Halverson, he recognized the rotation deformity. We must view the inferences to be drawn from that fact in the light most favorable to Halverson, the party opposing summary judgment. *Grams,* 97 Wis. 2d at 339, 294 N.W.2d at 477.

---

[3]Expert opinion testimony is cognizable on summary judgment only to establish whether a party bearing the burden of producing admissible opinion evidence can do so. *Dean Medical Center v. Frye,* 149 Wis. 2d 727, 734–35, 439 N.W.2d 633, 636 (Ct. App. 1989).

A fact-finder could reasonably infer that another orthopedic surgeon would also have immediately recognized the deformity. The fact-finder could reasonably infer that when he saw Halverson in March 1981, Dr. Cunningham recognized the deformity, believed Dr. Tydrich had negligently cast Halverson's ankle, and suspected that he had negligently advised Dr. Tydrich when Dr. Tydrich consulted with him at the hospital. That inference establishes a motive for him to have concealed the past negligence. *Cf. Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587–88 (1986) (lack of motive bears on permissible inferences which might be drawn from ambiguous evidence on summary judgment). Dr. Tydrich had referred Halverson to Dr. Cunningham for the March 1981 examination. The fact-finder could reasonably infer from that fact that Dr. Cunningham told Dr. Tydrich that Halverson's foot had been improperly cast.

Those inferences, if accepted by the fact-finder, would establish that the doctors had concealed their prior, allegedly negligent acts or omissions from Halverson. If that is the case, Halverson's filing for mediation on December 11, 1987 was timely, since he first knew or should have known of the concealment on December 16, 1986, when Dr. Breed examined him.

Other reasonable inferences can be drawn and accepted by the factfinder. One inference is that Dr. Cunningham negligently failed to recognize that the deformity existed when he saw Halverson for the second time in March 1981. If so, all claims are without the limitations period because concealment requires knowledge of the thing concealed. Another is that Dr. Cunningham knew he and Dr. Tydrich had been negligent but negligently failed to advise Halverson or Dr.

Tydrich.[4] If the fact-finder draws any of those inferences, it will find that one or both doctors concealed nothing from Halverson.

But the reasonable inferences include those that Dr. Cunningham recognized the deformity, told Dr. Tydrich about it, and both doctors concealed their prior negligent acts or omissions from Halverson. If the fact-finder accepts those inferences (and we do not hold that it must), the statute of limitations will not have run on Halverson's claims. The trial court therefore improperly granted summary judgment dismissing the complaint against the doctors.[5]

This leaves Halverson's complaint against the hospital. No fact-finder could reasonably infer that the hospital concealed its negligence. Halverson made no showing that the hospital had contact with him after he left the hospital on November 19, 1980. Halverson therefore failed to rebut the hospital's *prima facie* defense based on the statute of limitations. Consequently, unless Halverson prevails in his constitutional attack on the limitations statute, the trial court properly entered judgment dismissing his complaint against the hospital.

## 2. CONSTITUTIONALITY OF STATUTES

Halverson argues that application to him of the medical malpractice limitations statutes, secs. 893.55(1)

---

[4]If Halverson predicates his negligence claim on a 1981 act or omission by Dr. Cunningham, it is barred by the five-year statute, sec. 893.55(1)(b), Stats.

[5]Halverson also argues that Drs. Tydrich and Cunningham are estopped from raising the limitations defense and that the trial court abused its discretion by not allowing Halverson to amend his complaint to plead concealment. We need not reach those issues.

214

and 893.56, Stats., violates his rights to due process and equal protection under the fourteenth amendment to the United States Constitution and his right to a remedy under Wis. Const. art. I, sec. 9.[6] He therefore contends that his claim against the hospital is not time-barred.

Halverson bases his due process and equal protection arguments on his status as a minor at the time of the claimed injury. He finds constitutional fault with the last sentence of sec. 893.56, Stats., which provides that an action by a minor "shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section." He argues that he cannot be deprived of his claim merely because another person failed to bring an action on it.

██

Halverson's minority is irrelevant under the facts of this case. His complaint alleges that he discovered his injury over six years after the date the medical malpractice occurred. His mother's affidavit establishes that she, too, did not discover his injury until more than six years had elapsed. Halverson is identically situated with the adult who fails within five years to discover an injury caused by medical malpractice. The adult's claim is barred under sec. 893.55(1)(b), Stats. So is Halverson's claim against the hospital. His minority has no effect on

---

[6]Section 1 of the fourteenth amendment provides in relevant part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Wisconsin Const. art. I, sec. 9, provides:

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

the statute of limitations. This is not a case in which a minor lost the right to bring the action as provided in sec. 893.56, Stats., because his parents would not bring it.[7] We reject Halverson's due process and equal protection arguments.

Halverson's attack under Wis. Const. art. I, sec. 9, the guaranty to every person of a remedy for all wrongs, relies on *Kohnke v. St. Paul Fire Ins.*, 140 Wis. 2d 80, 88–89, 410 N.W.2d 585, 588 (Ct. App. 1987), *aff'd on other grounds,* 144 Wis. 2d 352, 424 N.W.2d 191 (1988), in which we held that sec. 893.55, Stats., as applied to the facts in that case, violated the constitutional guaranty. We said:

> Under this statute, because a medical malpractice action may never be commenced more than five years from the act or omission, [plaintiff's] claim would have been barred as of October 16, 1966. This is nearly fourteen years before the statute was adopted, and more than seventeen years before the injury was discovered. That result is unacceptable because it violates art. I, sec. 9, of the Wisconsin Constitution . . .. [Footnote omitted.]

*Kohnke* is inapplicable. Sections 893.55 and 893.56, Stats., have been in effect since July 1, 1980. Secs. 28 and 34, ch. 323, Laws of 1979. The defendants first treated Halverson in November 1980.

A limitations period does not violate Wis. Const. art. I, sec. 9, solely because it runs before the discovery of

---

[7]For such cases, see *Barrio v. San Manuel Div. Hosp.*, 692 P.2d 280 (Ariz. 1984); *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7 (Mo. 1986); *Mominee v. Scherbarth,* 503 N.E.2d 717 (Ohio 1986); *Schwan v. Riverside Methodist Hosp.,* 452 N.E.2d 1337 (Ohio 1983); *DeSantis v. Yaw,* 434 A.2d 1273 (Pa. Super. Ct. 1981); *Sax v. Votteler,* 648 S.W.2d 661 (Tex. 1983).

injury. We so held in *Hartland-Richmond Ins. v. Wudtke,* 145 Wis. 2d 682, 693, 429 N.W.2d 496, 500 (Ct. App. 1988), *overruled on other grounds, Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis. 2d 59, 68, 435 N.W.2d 244, 248 (1989). Halverson is identically situated with the plaintiff in *Hartland-Richmond.* His constitutional challenge therefore fails.

*By the Court.*—Judgment affirmed insofar as it dismisses the complaint against Richland Hospital and otherwise reversed and cause remanded for further proceedings.