CLL ASSOCIATES LIMITED PARTNERSHIP, a Wisconsin Limited Partnership and Wisconsin Housing & Economic Development Authority, a Wisconsin Public Body Corporate & Politic, Plaintiffs-Appellants,†

v.

ARROWHEAD PACIFIC CORPORATION, a Minnesota Corporation, Lund-Martin Construction, Inc., a Minnesota Corporation, Stanley Fishman Associates, Inc., Stanley Fishman, individually, Defendants,

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota Corporation, Defendant-Respondent,

CLARK ENGINEERING COMPANY, a Minnesota Corporation and Contintental Casualty Company, an Illinois Corporation, Defendants,

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota Corporation, Third Party Plaintiff,

CORN BELT ALUMINUM, INC., M.L. Gordon Sash & Door Company (now known as Gordon Millwork Company), and GRW Realty Company (formerly known as Standard Builders Supply, Inc.), Third Party Defendants,

CLARK ENGINEERING COMPANY, Third Party Plaintiff,

SECURITY INSURANCE COMPANY OF HARTFORD and Northbrook Insurance Company, Third Party Defendants.

Supreme Court

†Motion for reconsideration denied May 4, 1993.

No. 91–1460. *Oral argument November 30, 1992.—Decided*
*March 23, 1993.*

(Also reported in 497 N.W.2d 115.)

For the plaintiffs-appellants there was a brief by *Richard M. Burnham, Lawrence Bensky* and *LaFollette & Sinykin,* Madison and oral argument by *Mr. Burnham* and *Mr. Bensky.*

For the defendant-respondent there was a brief by *Thomas F. Surprenant* and *Jack D. Elmquist Law Offices,* Minneapolis, MN and *Bruce Gillman* and *Tomlinson, Gillman & Rikkers, S.C.,* Madison, of counsel, and oral argument by *Mr. Surprenant* and *Mr. Gillman.*

Amicus curiae brief was filed by *Paul D. Lawent,* Madison, for The Wisconsin Chapter, Associated General Contractors of America, Inc.

STEINMETZ, J. There is one issue presented in this case. When does a contract cause of action "accrue," as that term is used in sec. 893.43, Stats.,[1] Wisconsin's six-year statute of limitations for contract actions? We hold that under sec. 893.43, a contract cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred.

---

[1] Section 893.43, Stats., provides as follows:

**Action on contract.** An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

Plaintiff, CLL Associates Limited Partnership ("CLL"), constructed two, six-story apartment buildings in Superior, Wisconsin (hereinafter referred to as "project") in 1977. The Wisconsin Housing Finance Authority, predecessor to plaintiff Wisconsin Housing and Economic Development Authority ("WHEDA"), was the lender for the venture.

In July of 1988, CLL filed suit against several entities connected with the project, including the contractor responsible for constructing the buildings,[2] and its bonding company, St. Paul Fire & Marine Insurance Company ("St. Paul"). CLL alleged, in part, that the contractor breached the project construction contract by failing to include structural support within the walls of the buildings and installing defective windows.

At the close of discovery, St. Paul moved for summary judgment on the ground that CLL's action against it was time barred. The trial court held that sec. 893.43, Stats., begins to run, *i.e.* the action "accrues," when the contract breach occurs. It further held that CLL's action against St. Paul was time barred because it was commenced more than six years after the last possible date that the contractor could have breached the construction contract.

CLL appealed the trial court's ruling. It argued that sec. 893.43, Stats., should not begin to run until the contract breach is discovered, or with reasonable diligence should have been discovered, by the injured party, whichever occurs first. CLL further argued that under this rule its action against St. Paul was not time barred because it was commenced less than six years from the time that CLL discovered the alleged breaches.

---

[2] The contractor went out of business prior to this litigation and has not answered the complaint or amended complaint.

The court of appeals certified CLL's appeal to this court under the provisions of sec. 809.61, Stats. 1991–92. Although the trial court made no findings as to when CLL discovered or should have discovered the alleged breaches of contract, we assume for purposes of this appeal that CLL commenced this action less than six years after discovery.

■

In Wisconsin, a 90-year line of precedent holds that "[i]n an action for breach of contract, the cause of action accrues and the statute of limitations begins to run from the moment the breach occurs. This is true whether or not the facts of the breach are known by the party having the right to the action." *State v. Holland Plastics Co.*, 111 Wis. 2d 497, 506, 331 N.W.2d 320 (1983) (citations omitted); *see also Denzer v. Rouse*, 48 Wis. 2d 528, 531, 180 N.W.2d 521 (1970); *Milwaukee County v. Schmidt, Garden & Erikson*, 43 Wis. 2d 445, 455, 168 N.W.2d 559 (1969); *Krueger v. V.P. Christianson Silo Co.*, 206 Wis. 460, 462–63, 240 N.W. 145 (1932); *Ott v. Hood*, 152 Wis. 97, 100–101, 139 N.W. 762 (1913); *Effert v. Heritage Mut. Ins. Co.*, 160 Wis. 2d 520, 525, 466 N.W.2d 660 (Ct. App. 1990); *Segall v. Hurwitz*, 114 Wis. 2d 471, 490, 339 N.W.2d 333 (Ct. App. 1983).

■

In contrast, with respect to tort actions, Wisconsin has adopted what is known as the "discovery rule." Tort claims accrue and the statute of limitations begins to run on the date that the injured party discovers, or with reasonable diligence should have discovered, the tortious injury, whichever occurs first. *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983); *see also Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411, 388 N.W.2d 140 (1986); *Spitler v. Dean*, 148 Wis. 2d 630, 636, 436 N.W.2d 308 (1989); *H. A. Freitag & Son, Inc. v.*

*Bush,* 152 Wis. 2d 33, 38, 447 N.W.2d 71 (Ct. App. 1989).

Tort law has generally been viewed as serving three broad social purposes: (1) as a matter of justice, tort law shifts the losses caused by a personal injury to the one at fault; (2) by placing this cost with the one in the position to prevent the injury, tort law seeks to deter unsafe behavior; and (3) to compensate the victim, tort law creates a mechanism to distribute losses widely. *See* John G. Flemming, The Law of Torts 7-10 (7th ed. 1987). The distribution is effected through liability insurance premiums, consumer prices, etc. *Id.* at 8-10.

The modern trend has been to relax tort law. Statutes of limitation have been relaxed so that victims of latent torts may receive compensation. Consequently, much significant new case law has developed: for example, lawsuits brought for damages due to asbestos exposure, Dalkon Shield use, prescription use of diethylstilbestrol (DES) and workplace exposure to styrene, acrylonitrile, benzene, and other chemicals.

The discovery rule was adopted in *Hansen,* 113 Wis. 2d at 560. In that case, this court reasoned that statutes of limitation raise two conflicting public policy concerns: (1) protecting potential defendants from stale and fraudulent claims and (2) protecting meritorious claimants by allowing them an opportunity to seek legal redress for their injuries. *Id.* at 558. We examined each of these policy concerns in the tort context and concluded that "the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions." *Id.* at 559. Accordingly, we adopted the discovery rule for tort actions.

610

CLL asserts that this rationale applies with equal force in the contract context. Consequently, this court should apply the discovery rule to sec. 893.43, Stats. We disagree. In the context of general contract law, public policy favors the current rule that the contract statute of limitations begins to run at the time of breach. Here, unlike in tort law, the need to protect defendants from stale or fraudulent claims outweighs any injustice caused by barring rights of action prior to discovery. This is so because of two critical differences between tort claims and contract claims.

The first difference stems from the availability of liability insurance. In tort law, there is a trend toward "loss distribution": the spreading of tortious losses caused by a certain activity among all those who benefit from that activity, regardless of fault. Flemming, *supra,* at 7-10. Liability insurance is a mechanism for achieving loss distribution. An insured defendant is shielded from damages because the defendant's insurer is primarily liable. The loss is effectively spread to the pool of all insureds via liability insurance premiums. *Id.* at 10.

In contrast, contract law, which deals primarily with the enforcement of private promises, has nothing comparable to liability insurance. *See generally* 9 John A. Appleman & Jean Appleman, Insurance Law and Practice, sec. 5201-5256 (1981) (describes the types of commercial insurance). Although bonds and guaranties provide a form of contract performance insurance, the principal generally remains primarily liable. *See* 11A *id.* at sec. 6601, 6608. In other words, contract defendants bear their losses alone. *See id.*

The absence of liability insurance for contract defendants increases the need to protect them from stale or fraudulent claims. An adverse judgment is generally a much more serious matter to a contract defendant, who

611

is primarily liable on the judgment, than it is to an insured tort defendant, who is not primarily liable on the judgment.

The second critical difference between tort and contract law centers around control. Potential tort claimants generally have minimal control over their risk of loss due to tortious injury: for example, a motorist cannot exercise control over other drivers on the road; a consumer is typically unable to judge or investigate the design and manufacture quality of most products offered for purchase; and a patient can make very few informed judgments about the reasonableness of his or her medical care.

In contrast, a contract claimant often has a significant amount of control over its risks of loss. For example, in the instant case, the original owners and financiers had the choice of whether to build inexpensive buildings and whether to use inexpensive materials. They had the choice of whether to use an architect for field inspections and how many field inspections to require. They also had choices about warranties, retainages, and punch lists. Similarly, successor owners usually have choices about pre-purchase inspections, warranties, purchase price adjustments, etc., when negotiating a purchase.

The increased ability of potential contract claimants to protect themselves in the first instance lessens the need to provide them an opportunity for legal redress. Consequently, there is less need for an expansive contract statute of limitations.

In addition to the distinctions between contract and tort law, we are persuaded by the fact that the Wisconsin legislature has expressly rejected the discovery rule when

enacting a contract statute of limitation. The widely adopted Uniform Commercial Code creates a statute of limitations for sales contracts which runs from the time of breach, regardless of when discovery occurs. Wisconsin's version of this law, codified in sec. 402.725(2), Stats. 1991-92, contains the recommended language of the uniform act: "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." This enactment constitutes a legislative judgment that, at least in the sales context, the policy interests surrounding contract statutes of limitation balance in favor of our holding.

We recognize that a contract breach may sometimes be latent and, in practical terms, undetectable. However, it must be emphasized that sec. 893.43, Stats., applies to contracts in general, as opposed to one distinct type of transaction. Our holding rests on the fact that policy considerations do not favor a broadly applied discovery rule in the contract context. If the general rule that we uphold today creates unjust results in specific situations not now before this court, *i.e.* in the consumer context where contracting consumers have limited bargaining power, the legislature, with its greater resources for weighing policy, is best equipped to enact specific ameliorative laws. *See Hansen,* 113 Wis. 2d at 556-57; *Peterson v. Roloff,* 57 Wis. 2d 1, 5-6, 203 N.W.2d 699 (1973), *overruled on other grounds by, Hansen v. A. H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983); *Reistad v. Manz,* 11 Wis. 2d 155, 158-60, 105 N.W.2d 324 (1960), *overruled on other grounds by, Hansen v. A. H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983).

CLL argues that sec. 893.43, Stats., as herein construed and applied, violates its right to due process guaranteed by the Fourteenth Amendment to the United States Constitution and runs afoul of the access-to-

courts provision in Article I, sec. 9,[3] of the Wisconsin Constitution. We reject both of these arguments.

CLL's right to due process is not violated merely because sec. 893.43,Stats., extinguished its cause of action before it discovered its claim. *Rod v. Farrell*, 96 Wis. 2d 349, 356–57, 291 N.W.2d 568 (1980), *overruled on other grounds by, Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983);[4] *see also Halverson v. Tydrich*, 156 Wis. 2d 202, 214–16, 456 N.W.2d 852 (Ct. App. 1990); *Yotvat v. Roth*, 95 Wis. 2d 357, 369–70, 290 N.W.2d 524 (Ct. App. 1980). Determining when a cause of action accrues for statute of limitations purposes is a policy decision, not an issue of constitutional dimension. *Farrell*, 96 Wis. 2d at 356–57.

Similarly, sec. 893.43, Stats., does not violate Article I, sec. 9, of the Wisconsin Constitution solely because the limitations period expired before CLL discovered its injury. *Id.* at 355–56; *Halverson*, 156 Wis. 2d at 216–17;

---

[3] Article I, sec. 9 of the Wisconsin Constitution provides as follows:

> **Remedy for wrongs.** Section 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

[4] *Hansen* overruled *Farrell's* refusal to apply the discovery rule to tort actions. However, *Hansen* did not disturb *Farrell's* constitutional pronouncements as to due process or Article I, sec. 9. *Hansen* was based solely on considerations of policy. *Hansen*, 113 Wis. 2d at 558–60. The court of appeals expressly recognized this fact in *Hartland-Richmond Ins. v. Wudtke*, 145 Wis. 2d 682, 694, 429 N.W.2d 496 (Ct. App. 1988), *overruled on other grounds by, Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 435 N.W.2d 244 (1989).

*Hartland-Richmond Ins. v. Wudtke,* 145 Wis. 2d 682, 690–93, 429 N.W.2d 496 (Ct. App. 1988); *Yotvat,* 95 Wis. 2d at 369–70.

> This court has said that although Art. I, sec. 9, Wisconsin Constitution, guarantees a suitor a day in a court of competent jurisdiction to which he may present his claim, the statute of limitations may bar a plaintiff's action and the defending party may rely on the statutory bar.

*Farrell,* 96 Wis. 2d at 355–56.

*Kohnke v. St. Paul Fire Ins.,* 140 Wis. 2d 80, 88–89, 410 N.W.2d 585 (Ct. App. 1987) *aff'd on other grounds,* 144 Wis. 2d 352, 424 N.W.2d 191 (1988) is inapplicable to this case. In *Kohnke,* the plaintiff was rendered sterile by a surgical procedure performed in 1961, when the plaintiff was five and one-half months old. He discovered the injury 22 years later when he underwent medical tests for an infertility problem. After concluding that the applicable statute of limitation was sec. 893.55, Stats. 1987–88,[5] enacted in 1980, rather than the statutes of limitation existing in 1961, the time of injury, the court of appeals held that, as applied to the facts

---

[5] Section 893.55, Stats., provides as follows:

**893.55 Medical malpractice; limitation of actions; limitation of damages; itemization of damages. (1)** Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

before it, sec. 893.55 violated Article I, sec. 9, of the Wisconsin Constitution. It reasoned as follows:

> Under [sec. 893.55], because a medical malpractice action may never be commenced more than five years from the act or omission, [the plaintiff's] claim would have been barred as of October 16, 1966. This is nearly fourteen years before the statute was adopted, and more than seventeen years before the injury was discovered. That result is unacceptable because it violates art. I, sec. 9, of the Wisconsin Constitution . . ..

*Id.* at 88-89.

The court of appeals later distinguished *Kohnke* in *Halverson,* 156 Wis. 2d at 216-17. In *Halverson,* the claimant, relying on *Kohnke,* argued that sec. 893.55, Stats., as applied to him, violated Article I, sec. 9, because it extinguished his cause of action before he discovered his injury. The court rejected this argument. It reasoned that the violation of Article I, sec. 9, in *Kohnke* stemmed from the fact that sec. 893.55, as applied by the *Kohnke* court, extinguished the plaintiff's action 14 years before the statute had even been enacted. In the case at bar, the plaintiff's injury occurred after sec. 893.55 had been enacted. Consequently, the *Kohnke* rationale did not apply. The court went on to state that "[a] limitations period does not violate Wis. Const. art. I, sec. 9, solely because it runs before the discovery of injury." *Id.* at 216-17.

The reasoning in *Halverson* applies to the instant case. Consequently, *Kohnke* is inapplicable, and sec. 893.43, Stats., as applied, does not violate Article I, sec. 9. This is so because the six-year contract statute of limitations was enacted prior to 1977 when the parties entered into the contract at issue. *See* Wis. Stat. Ann. sec. 893.43 (historical note). As a result, CLL's action

was not extinguished by the contract limitations period before said period was adopted.

For the foregoing reasons, we decline to apply the discovery rule to sec. 893.43, Stats. Under that section, a cause of action accrues at the time the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred.

*By the Court.*—The judgment of the Dane county circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I dissent because I conclude that the discovery rule which this court has applied to tort actions applies to this breach of contract action.

Involving as it does an alleged undiscoverable breach of contract, this case typifies the policy factors that led to the adoption of the discovery rule in the tort context. According to the majority's holding, the plaintiffs in this contract action lost their right to bring a lawsuit for breach of contract before they even knew that they were injured. As we stated in *Hansen v. A.H. Robins,* 113 Wis. 2d 550, 559, 335 N.W.2d 578 (1983), "[a]lthough theoretically a claim is capable of enforcement as soon as the injury occurs, as a practical matter a claim cannot be enforced until the claimant discovers the injury and the accompanying right of action. In some cases the claim will be time barred before the harm is or could be discovered, making it impossible for the injured party to seek redress. Under these circumstances the statute of limitations works to punish victims who are blameless for the delay and to benefit wrongdoers by barring meritorious claims." 113 Wis. 2d at 559.

Courts and commentators have recognized that a single set of facts may give rise to actions both in contract and in tort, making it difficult to draw a clear distinction between the two actions.[1] These overlapping actions reside in what Professor Prosser called the "shadowy borderland" between contract and tort.[2]

In the present case, the claims for breach of contract and negligence arise from the same source. The breach of contract claim is based on the allegation that Arrowhead Pacific failed to construct the development according to the specifications contained in the contract. The negligence claim alleges that by failing to build the development in the manner specified in the contract, Arrowhead Pacific breached a duty "to exercise a standard of care ordinarily exercised by reasonably prudent contractors in the fulfillment of construction contracts." Thus, the alleged failure to perform the contract amounted to a tort because the contract "result[ed] in or accompanie[d] a relationship between the parties which the law recognizes as giving rise to a duty of affirmative care." Prosser on Torts at 662-63; 185 (professional persons and persons who undertake

---

[1] *See* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on Torts 655-667 (1984); *Brooks v. Hayes,* 133 Wis. 2d 228, 235, 246, 395 N.W.2d 167 (1986) (failure to exercise common law duty to perform contracts with care and skill is a tort as well as a breach of contract); *Matusik v. Dorn,* 756 P.2d 346, 347-48 (Ariz. App. 1988) (defective construction can give rise to claims for breach of implied warranty and common law duty of care).

[2] *See* William Lloyd Prosser, *The Borderland of Tort and Contract* in *Selected Topics on the Law of Torts: Prosser* (1953). *See also* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, *Prosser and Keeton on Torts* 655 (1984). *See also* Richard Posner, *Economic Analysis of Law* 98-102 (1972); Grant Gilmore, *Death of Contract* 87 (1974).

work calling for special skill are required to exercise reasonable care and to possess a standard minimum of special knowledge and ability). *See also Brooks v. Hayes,* 133 Wis. 2d at 246; *Brown v. Ellison,* 304 N.W.2d 197, 201 (Iowa 1981) (professional malpractice suits are closely similar to actions for the breach of an implied warranty in a construction contract because both arise from the breach of an implied agreement to use an expected standard of care); *Erenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1200 (D.C. App. 1984) (inadequate performance of construction contracts can give rise to claims in tort).

Because the plaintiffs' negligence and breach of contract claims overlap, no satisfactory basis exists for applying the discovery rule differently to the two claims. The majority of jurisdictions that have addressed the applicability of the discovery rule to actions for breach of a construction contract through defective performance have concluded that the discovery rule is applicable.

In *Erenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192 (D.C. App. 1984), for example, the court applied the discovery rule to an action for breach of a contract for construction of a patio room. The court rejected the defendant's argument that the discovery rule was not applicable in the contract context, holding that "the factors that supported application of the rule in other contexts are equally applicable here. First, a client in appellants' position, who has arranged for the design and construction of a new room to his house, must undoubtedly rely upon the professional skills of those hired to do the work . . .. Second, the difficulty in recognizing a deficiency in either design or construction is even more problematical when the deficiency is latent in nature." 483 A.2d 1202. While it acknowledged that statutory limitation periods are intended to protect

defendants and courts against stale claims, the court nevertheless concluded that "the added burden imposed upon a defendant to defend against an 'old' claim due to application of the discovery rule is not unreasonable . . .. Application of the discovery rule in suits based upon deficient design and construction 'does not frustrate the policies underlying the statute of limitations where the injured party does not, and in the exercise of reasonable diligence, could not have known of his claim prior to discovery.' " 483 A.2d at 1202–03.

Similarly, in *Santee Portland Cement Co. v. Daniel International Corporation,* 384 S.E.2d 693 (S.C. 1989), the court applied the discovery rule to a breach of contract action for failure to build a cement plant to specification. The court concluded that the purposes of the statutes of limitations "must be balanced against a plaintiff's interest in prosecuting an action and pursuing his rights." "Plaintiffs," the court continued, "should not suffer where circumstances prevent them from knowing they have been harmed." 384 S.E.2d at 694. *See, also, e.g., Brown v. Ellison,* 304 N.W.2d 197 (Iowa 1981); *El Paso Association v. J.R. Thurman & Co.,* 786 S.W.2d 17 (Tex. App. 1990); *Matusik v. Dorn,* 756 P.2d 346 (Ariz. App. 1988); *A.G. Aberman, Inc. v. Funk Building Corp.,* 420 A.2d 594 (Pa. Super. 1980); *Poffenberger v. Risser* (Md. App. 1981); *McKinley v. Willow Construction Co., Inc.,* 693 P.2d 1023 (Colo. App. 1984).[3]

---

[3] The defendants-respondents contend that many jurisdictions do not apply the discovery rule to cases arising from breach of contract. A review of the cases they cite for this proposition shows that the New Hampshire Supreme Court declined, in 1973, to apply the discovery rule to a case involving the alleged breach of a construction contract. *Roberts and Richards & Sons, Inc.,* 304 A.2d 364 (N.H. 1973).

I would join these courts in recognizing that the purposes underlying adoption of the discovery rule in the tort context are equally present in a breach of contract

The other cases they cite are inapposite because they arose in the context of disputes distinctly different from that presented in this case. In many of these cases the parties did not raise the discovery rule. *See, e.g., Richardson Associates v. Lincoln-Devore,* 806 P.2d 790 (Wyo. 1990), breach of soil testing contract, discovery rule did not apply where question was allocation of blame for obvious problems; *Ft. Oglethorp Assoc. v. Hials Construction,* 396 S.E.2d 585 (N.C. App. 1990), breach of contract action accrued against roofer when roof was substantially complete, no undiscoverability alleged; *Martin v. Ray Lackey Enterprises, Inc.,* 396 S.E.2d 327 (N.C. App. 1990), action arising from breach of lease in which the language of the lease created ambiguity about date of breach; *Safeco Ins. Co. v. Barrom,* 773 P.2d 56 (Wash. 1989), action against insurance company accrues on date that underinsured motorist contract is breached, not on accident date; *Dupree v. Twin City Bank,* 777 S.W.2d 856 (Ark. 1989), general principles governing breach of contract apply to breach of oral agreement not to contest foreclosure; *Aronow Roofing Co. v. Gilban Bldg. Co.,* 902 F.2d 1127 (3d Cir. 1990), breach of contract for failure to pay, dispute about whether contract had been signed under seal; *McGowan v. Pillsbury Co.,* 723 F. Supp. 530 (W.D. Wash. 1989), dispute over ice cream store franchise contract, statute of limitations would be tolled by fraud or breach of fiduciary relationship only; *City of Bluefield v. Autotrol,* 723 F. Supp. 362 (S.D.W. Va. 1989), breach of construction contract, no claim of undiscoverability; *Jackson v. Union Nat. Bank of Macomb,* 715 F. Supp. 892 (C.D. Ill. 1989), action under bank holding company act, action accrues on date of violation as in similar antitrust actions.

The case cited by amicus curiae, *Kitchen Krafters v. Eastside Bank of Montana,* 789 P.2d 567 (Mont. 1990), is also inapposite. It concluded that the breach of implied duty of good faith and fair dealing in contract for sale of real property accrues at the time of the breach unless fraudulently concealed.

action arising from the defective performance of a construction contract.

The majority opinion raises policy considerations about the availability of liability insurance to distribute the costs of tortious losses and the degree of control possessed by contract claimants. These concerns are valid and worthy of consideration. Nonetheless, between two contracting parties, there is no reason that the party who contracted to do the work should not bear the cost of the breach. The party hired to do work will generally have more control over the quality of the work than will the purchasing party. If either party must bear a loss alone it is more equitable to impose the loss on the party which had the greater opportunity to prevent it, in this case, the contractor.[4]

As we explained in *Hansen,* statutes of limitations present two conflicting public policies: 1) discouraging stale and fraudulent claims, and 2) "allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained." 113 Wis. 2d at 558. I conclude that in the context of the contract and tort claims in this case, "the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions." 113 Wis. 2d at 559. I would remand the breach of contract claim to the circuit court for determination whether the breach could have been detected prior to the expiration of the statute of limitations.

For the reasons stated above, I dissent.

---

[4] The majority errs in relying on sec. 402.725, Stats. 1989–90, for evidence of the legislature's intent to bar application of the discovery rule in this case. Section 402.725, Stats. 1989–90, is part of the Uniform Commercial Code and applies only to "transactions in goods." Section 402.102, Stats. 1989–90.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join in this dissent.