John R. MILLER, a minor, by and through his guardian ad litem, Richard E. Sommer, Glenn W. Miller and Donna J. Miller, Plaintiffs-Appellants,†

v.

Diane M. KRETZ, M.D. and Michael Kretz, M.D., Defendants-Respondents,

UNKNOWN INSURANCE COMPANY NO. 1, E. Stephanie Littrel, M.D., Unknown Insurance Company No. 2 and Wisconsin Patients Compensation Fund, Defendants.

Court of Appeals

*No. 94–2231. Submitted on briefs January 11, 1995.—Decided February 7, 1995.*

(Also reported in 531 N.W.2d 93.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Richard E. Sommer* of *Sommer, Olk, Schroder & Payant* of Rhinelander.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Peter L. Hessert* of

*Patterson, Richards, Hessert, Wendorff & Ellison* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   John Miller, a minor (D.O.B. 3-10-82), through his guardian ad litem, Richard Sommer, appeals an award of a partial summary judgment ruling §§ 893.55 and 893.56, STATS., constitutional. Miller contends that § 893.55(1)(b), the medical malpractice statute of limitation, violates the equal protection clauses of the Wisconsin and United States Constitutions. Because we conclude that § 893.55 is constitutional under an equal protection of law analysis, we affirm the summary judgment.

## BACKGROUND

Diane Kretz is a physician practicing with North Twin Medical Associates in Eagle River. She first had contact with Miller when his mother, Donna Miller, brought him in for his two-month checkup. Kretz saw him again for his six-month checkup on September 14, 1982, and again for his nine-month checkup on February 1, 1983. She also saw Miller on August 9, 1983, and August 21, 1984. In August 1985, she treated Miller for a cough and slight fever. The last time she saw Miller was on June 24, 1986, when Miller was brought to the clinic complaining of stomachaches. Kretz detected a heart murmur and consulted Michael Kretz, M.D., who advised an echocardiogram. Based on the results of this test, Michael Kretz reported to Miller's mother that the murmur was only functional and would disappear in time. Consequently, the Millers sought no further examination or treatment of their son's heart murmur.

On January 25, 1993, when Miller was over ten years old, he underwent a physical examination for insurance purposes. Doctors found Miller had severe systolic hypertension in his upper extremities. Miller was referred to cardiologists, who identified a severe juxtaductal coarctation of his aorta, which is a malformation of the heart's main artery. The treating physicians repaired the condition by surgery.

Miller, through his guardian ad litem, commenced this action against Diane and Michael Kretz. Miller contends that the Kretzes were causally negligent by failing to diagnose, treat and recommend consultation with a pediatric cardiologist for his severe juxtaductal coarctation of the aorta, which Miller may have had since birth and was unknown to the Millers until January 25, 1993.

The Kretzes moved for summary judgment to dismiss the charges on the grounds that Miller's claims were barred by the medical malpractice statute of limitation, § 893.55(1)(b), STATS.[1] The trial court granted the summary judgment: (1) denying Miller's motion to strike the Kretzes' statute of limitations affirmative defense; (2) denying Miller's motion to have §§ 893.55

---

[1] Section 893.55, STATS., states in pertinent part:

Medical malpractice; limitation of actions; limitation of damages; itemization of damages. (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

. . . .

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, *except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.* (Emphasis added.)

and 893.56[2] declared unconstitutional; and (3) granting the Kretzes' motion to dismiss. Miller appeals this summary judgment, contending that § 893.55(1)(b) violates his guarantees of equal protection under the Wisconsin and the United States Constitutions.

## DISCUSSION

The constitutionality of a statute is a question of law that we review without deference to the trial court. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991). There is a presumption that statutes are constitutional and, if there is a reasonable basis for the exercise of legislative power, we will preserve the statutes' constitutionality. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). The challenger must show that the statute is unconstitutional beyond a reasonable doubt. *Id.*

Miller contends that § 893.55(1)(b), STATS., creates an impermissible classification of immune tortfeasors

---

[2] Section 893.56, STATS., sets forth the statute of limitation in medical malpractice cases for minors. This statute states in pertinent part:

> Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by a health care provider *within the time limitation under s. 893.55 or by the time that person reaches the age of 10 years, whichever is later*. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section. (Emphasis added.)

Because John was over 10 years old and is not under any other disability and this action was brought by his parents and guardian ad litem, the time limits in § 893.55, STATS., apply.

in violation of the equal protection clauses of both the Wisconsin[3] and United States Constitutions.[4] Our supreme court has held that the equal protection clause of the Wisconsin Constitution is substantially equivalent to the equal protection clause of the federal constitution. *Funk v. Wollin Silo & Equip.,* 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244, 245 n.2 (1989). We will uphold a statute under an equal protection analysis "[i]f a rational basis exists to support the classification, unless the statute impinges on a fundamental right or creates a classification based on a suspect criterion." *State v. McKenzie,* 151 Wis. 2d 775, 779, 446 N.W.2d 77, 78 (Ct. App. 1989).

Because Miller's claim does not involve a fundamental right or suspect criterion[5] attack, we examine the statute under the rational basis analysis. *See Szarzynski v. YMCA, Camp Minikani,* 184 Wis. 2d 875, 886-87, 517 N.W.2d 135, 139 (1994). Under this analysis, equal protection of the law is denied if the legislature has made an irrational or arbitrary classification. *Omernik v. State,* 64 Wis. 2d 6, 18-19, 218

---

[3] The due process and equal protection clauses of the Wisconsin Constitution provide: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." WIS. CONST. art I, § 1.

[4] The due process and equal protection clauses of the United States Constitution provide: "No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

[5] Examples of criteria that are suspect include race, alienage or nationality. *See In re Reitz,* 53 Wis. 2d 87, 93 n.3, 191 N.W.2d 913, 916 n.3 (1971).

N.W.2d 734, 742 (1974). In *Omernik*, our supreme court set forth a five-prong test to determine whether there was a reasonable legislative classification:

> (1) All classification [sic] must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation.

*Id.* at 19, 218 N.W.2d at 742.

Miller specifically asserts that the absolute bar to any recovery for injuries resulting from medical malpractice after the passage of five years from the date of the act or omission of negligence creates an impermissible classification of immune tortfeasors in violation of the equal protection of the law. We are not persuaded.

First, Wisconsin courts have traditionally held that statutes of limitation are policy considerations within the province of the legislature. *Peterson v. Roloff,* 57 Wis. 2d 1, 5, 203 N.W.2d 699, 701-02 (1973). Further, we recognize that the legislature is aware of the policy issues involved in medical malpractice actions. *Rod v. Farrell,* 96 Wis. 2d 349, 355, 291 N.W.2d 568, 571 (1980).

Second, in *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983), our supreme court adopted the discovery rule for all tort actions, except for those already governed by a legislatively created discovery rule. Section 893.55(1)(b), STATS., does just that by adopting a limited version of the discovery rule as applied to medical malpractice cases. *See*

James D. Ghiardi, *Computing Time in Tort Statutes of Limitation,* 64 MARQ. L. REV. 575, 579 (1981). Thus, the *Hansen* ruling excepts § 893.55 because this section was enacted by the legislature in 1979, four years before *Hansen.*

Third, § 893.55, STATS., was again addressed and approved in *Halverson v. Tydrich,* 156 Wis. 2d 202, 456 N.W.2d 852 (Ct. App. 1990). In *Halverson,* the plaintiff brought a suit against the hospital and physicians more than five years after his last medical treatment, contending the application of the five-year statute of limitation violated his due process and equal protection rights as a minor. *Id.* at 214-15, 456 N.W.2d at 857. The court concluded that the plaintiff's minority status was irrelevant and that he was identically positioned as an adult because the discovery of the injury by both the minor and his mother was over six years after the date of the alleged medical malpractice; thus, his claim was barred. *Id.* at 215, 456 N.W.2d at 857-58. The court also rejected the due process and equal protection arguments. *Id.* at 216, 456 N.W.2d at 858. Although this constitutional discussion was not fully developed and may be distinguished from the facts here, the equal protection question was addressed and the statute found constitutional.

The holdings in *Hansen* and *Halverson* notwithstanding, we must apply the rational basis inquiry under the equal protection analysis to the facts of this case. The assertion that § 893.55, STATS., is constitutionally defective because it establishes an impermissible class of immune tortfeasors—namely health care providers—is without merit, especially in light of the strong presumption of the constitutionality of § 893.55.

■ Accordingly, we examine *Omernik's* five criteria in relation to § 893.55(1)(b), STATS., to discern if the legislature made an irrational or arbitrary classification; therefore, denying equal protection of the law. As with health care liability in general, the statute of limitation is substantially distinct from other limitations of tort claims due to the special nature of such claims. The five-year discovery limitation for medical malpractice claims is a distinct time period, consistent with the act's purpose, expounded by the Wisconsin Judicial Council.[6] This classification of medical malpractice does not pertain just to circumstances that presently exist, *i.e.,* it does not preclude additional health care providers from being within the class. The statute applies to all health care providers in Wisconsin equally. Last, the class of health care providers is reasonably distinct from other classes, as to rationalize substantially different legislation. Thus, we conclude that there is a rational basis for this statute, and it does not create an impermissible class of immune tortfeasors.

■ Many other jurisdictions' medical malpractice statutes of limitation have been challenged on various

[6] The recommendation for the limited discovery rule under § 893.55, STATS., was proposed to the legislature by the Wisconsin Judicial Council as part of 1979 Wis. Laws 323. The legislative history indicates that the potential for the continuing liability that health care providers face in medical malpractice actions, coupled with malpractice insurance premiums, were pertinent considerations in drafting the statute. *See* Staff Paper #10, Malpractice Committee, Legislative Council Staff, *Analysis of Statistical Data and Recent Wisconsin Cases on Statutes of Limitation* (September 21, 1976).

constitutional grounds, including equal protection. Regardless of whether the statute applies to all health care providers, all malpractice actions or limited groups of victims or providers, the statutes have been consistently upheld against the assertion that the classifications are unreasonable, thus denying equal protection of the law. *See, e.g., Sellers v. Edwards,* 265 So.2d 438, 440 (Ala. 1972) (two-year time limit to bring medical malpractice action not arbitrary or unreasonable); *Craven v. Lowndes County Hosp. Auth.,* 437 S.E.2d 308, 310 (Ga. 1993) (due to nature of practice of medicine, statute of repose is rational); *Rohrabaugh v. Wagoner,* 413 N.E.2d 891, 894 (Ind. 1980) (reasonable basis exists for legislature to support limitations statute in malpractice cases); *Taylor v. Karrer,* 244 N.W.2d 201, 204 (Neb. 1976) ("public policy dictates diverse legislation in regard to professional services"); *Harrison v. Schrader,* 569 S.W.2d 822, 826 (Tenn. 1978) (reasonable basis for distinction made for health care providers).

Further, medical malpractice statutes in general have been upheld as constitutional. In the watershed case of *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 261 N.W.2d 434 (1978), our supreme court examined the constitutionality of health care liability in detail. The entire statutory scheme created to resolve medical malpractice claims was examined with the court concluding that ch. 655, STATS., fulfilled the five constitutional criteria and, thus, reasonable legislative classifications were made. *Id.* at 508-09, 261 N.W.2d at 442-43. Specifically, the *Strykowski* court explained:

> Medical malpractice actions are substantially distinct from other tort actions. The classification is plainly germane to the act's purposes. The law

applies to all victims of health care providers as described therein. The legislature declares that the circumstances surrounding medical malpractice litigation and insurance required the enactment of the legislation.

*Id.* at 509, 261 N.W.2d 442-43. Further, the supreme court cited the reasoning contained in the legislation:

The legislature cited a sudden increase in the number of malpractice suits, in the size of awards, and in malpractice insurance premiums, and identified several impending dangers: increased health care costs, the prescription of elaborate "defensive" medical procedures, the unavailability of certain hazardous services and the possibility that physicians would curtail their practices.[7]

*Id.* at 508, 261 N.W.2d at 442.

Thus, because of health care's unique aspects and the distinctive nature of medical malpractice actions, classifications limited to medical care and treatment were found constitutionally reasonable. *Id.* at 508-12, 261 N.W.2d at 442-44. Although the constitutional attack in *Strykowski* was against the classification of medical malpractice victims versus tort victims, this rationale extends to the classification of health care providers in the medical malpractice limitations statute as well. Because of the distinct nature of medical malpractice claims, the costs involved and insurance issues, distinguishing health care providers in medical malpractice actions is reasonable.

---

[7] A wide range of statutes in response to the availability and affordability of liability insurance followed the medical malpractice crisis of the mid 1970's. *See* Comment, *An Analysis of State Legislative Responses to the Medical Malpractice Crisis,* 1975 DUKE L.J. 1417, 1417.

The *Strykowski* court articulated, "The public has an important interest in the quality of health care, and the legislature's efforts to promote that interest cannot be said to be unreasonable." *Id.* at 509-10, 261 N.W.2d at 443. Further, as the dissent in *Strykowski* indicated, "The legislature has broad scope to deal with economic problems and experiment with solutions to economic problems." *Id.* at 532, 261 N.W.2d at 453 (Abrahamson, J., dissenting). Consequently, we conclude that Miller did not overcome the presumption that § 893.55, STATS., is constitutional. The classification of health care providers and the connected statutes of limitation are not irrational or arbitrary, but based on rational, reasonable criteria.

*By the Court.*—Judgment affirmed.